ALBERT MILLER AND JOSEPH TURNER v. THE SCOTTISH UNION & NATIONAL INSURANCE COMPANY.

*Fire insurance—Agency—Notice to insured—Scope of authority.*

Plaintiffs applied to a firm of insurance agents for $10,000 of insurance on their mill property. The agents were unable to place the whole amount in their companies, and applied to an agent of the defendant to write the excess, which he did. On examining the policy, they called his attention to the fact that the property was mortgaged, and that the mortgage was being foreclosed, and asked that an indorsement to that effect be placed upon the policy. The agent of the defendant company replied that it was contrary to his orders to write on mortgaged mill property, but, in answer to their question whether he could not make an explanation, and get the company to carry the risk, he replied that he would submit the matter to the company, and thereupon made the indorsement, and delivered the policy to the agents, who delivered it to the plaintiffs. Plaintiffs had no notice of this conversation, and paid the premium to said agents. The mill was burned the second day after the policy was delivered. Notice of the loss was telegraphed to the defendant, and on the same day it wrote to its agent, directing that the policy be canceled, since which it has denied liability thereon. The policy provided that, in any matter relating to the procuring of the insurance covered by it, no person, unless duly authorized in writing, should be deemed the agent of the defendant. And it is held that the plaintiffs are not chargeable with notice of the want of authority on the part of defendant's agent to make the indorsement, and a judgment in their favor is affirmed.

Error to Bay. (Cobb, J.) Submitted on briefs April 10, 1894. Decided June 16, 1894.

*Assumpsit.*  Defendant brings error.  Affirmed.  The facts are stated in the opinion.

*Mark Norris,* for appellant.

*McDonell & Hall,* for plaintiffs.

MONTGOMERY, J.  This is an action on a policy of insurance.  The policy was issued from the agency of the company at Bay City, and was duly countersigned by George Washington, the agent at that place.  The plaintiffs made application to Knaggs & Plum, insurance agents at Bay City, to place $10,000 of insurance on their mill. Knaggs & Plum, being unable to place the whole amount in companies represented by them, applied in turn to Mr. Washington to write the policy in question, which he did. On examining the policy, Knaggs & Plum called the attention of Mr. Washington to the fact that the mill was mortgaged, and the mortgage in process of foreclosure, and asked that the following indorsement be placed upon the policy:

" It is understood that the mortgage on this property is in process of foreclosure, such proceedings being amicable for the purpose of perfecting the title."

Mr. Washington replied that it was contrary to his orders to write on mortgaged mill property, but Knaggs & Plum asked if he could not make an explanation, and get the company to carry it, stating that the policy would be of no value without it.  The agent Washington replied that he would submit it to the company, and thereupon made the indorsement, and delivered the policy to Knaggs & Plum, who delivered it to plaintiffs.  Plaintiffs had no notice of this conversation, and paid the premium to Knaggs & Plum.  A fire occurred the second day after .the policy was delivered.  Notice of this was telegraphed

to the company by the agent Washington, and on the same day it wrote a letter to him, directing that the policy be canceled, and it has since denied liability upon the policy. The policy contained the following clause:

" In any matter relating to the procuring of this insurance, no person, unless duly authorized in writing, shall be deemed the agent of this company."

The sole question in this case is whether, under the facts stated, the notice of want of authority to Knaggs & Plum was notice to the plaintiffs. The circuit judge was of the opinion that the question was ruled by *McGraw v. Insurance Co.*, 54 Mich. 145. Counsel for defendant contends that the case referred to has been since overruled in effect,[1] and that, if not, this case is distinguishable from that, in that the present policy contains the provision, above quoted, that, in any matter relating to the procuring of the insurance, no person, unless duly authorized in writing, shall be deemed the agent of the company.

We do not deem it necessary to decide whether the present case is distinguishable from *McGraw v. Insurance Co.*, or whether Knaggs & Plum are to be treated as agents of the insured or the insurer. If it be assumed that they were agents of the plaintiffs, on every principle of equity the defendant is bound by the policy in suit. This is not a case where the broker has misrepresented the risk, or in which the agent of the company has been deceived in any other manner. Nor is it a case where notice of the purpose to cancel has been brought home to the broker. But the sole question is whether the plaintiffs are chargeable with notice of the want of authority on the part of the agent Washington to do what he attempted to do. We quite agree with the defendant's counsel

---

[1] Counsel cited, in support of this proposition, *Busch v. Wilcox*, 82 Mich. 315, 336; *Ripley v. Case*, 86 Id. 263.

that the same rule should obtain in dealing with the acts of agents to obtain insurance as is applied in interpreting the acts of agents in other business transactions, but we do not agree with counsel that any rules governing the conduct of agents will permit the defendant in this case to escape liability on this policy. There can be no doubt that, had the defendant's agent Washington delivered the policy directly to plaintiffs, the company would be bound by his act. It was directly within the scope of his apparent authority. We think it is quite clear that the company is bound, notwithstanding the notice to Knaggs & Plum, in this case, upon precisely the same principle, viz., that, where one of two innocent parties must suffer by the wrong of the third, it should be that one which has put it in the power of the third party to work the injury. The notice to Knaggs & Plum of want of authority was accompanied by notice to Washington, equally clear, that Knaggs & Plum had limitations placed upon their authority to bind the plaintiffs. The course of business was enough to furnish this notice. It cannot be contended that the defendant's agent did not know that Knaggs & Plum were only empowered to furnish *insurance* to plaintiffs, and were not empowered to buy waste paper. Knowing this, and being also directly informed by Knaggs & Plum that, without the indorsement in question, the policy would be valueless,—a fact which he must be assumed to have known,—he intrusted the policy to them, to be delivered to the plaintiffs as a binding contract. If notice to Knaggs & Plum was notice to plaintiffs, certainly notice to Washington of the limitations of their authority was likewise notice to defendant. Yet with this notice he put it in the power of Knaggs & Plum to collect the premium from the plaintiffs upon a policy which he knew, from the nature of Knaggs & Plum's employment, they had no power to accept.

It is undoubtedly a general rule that notice to an agent is equivalent to notice to the principal. Mr. Story states that the rule is based upon the presumption that such notice is communicated to the principal (Story, Ag. § 140); and in most cases this is a conclusive presumption, resulting in the general rule that the law imputes to the principal notice of facts which the agent acquires while acting as such agent within the scope of his authority. But, as pointed out in Mechem on Agency (section 721), this rule is subject to exceptions,—

" And such notice or knowledge will not be imputed (1) where it is such as it is the agent's duty not to disclose, and (2) where the agent's relations to the subject-matter, or his previous conduct, render it certain that he will not disclose it, and (3) where the person claiming the benefit of the notice, or those whom he represents, colluded with the agent to cheat or defraud the principal."

In section 723 the learned author further states:

" The rule is based, as has been seen, upon the principle that it is the duty of the agent to communicate to his principal the knowledge possessed by him relating to the subject-matter of the agency, and material to the principal's protection and interests. This presumption, however, will not prevail where it is certainly to be expected that the agent will not perform this duty, as where the agent, though nominally acting as such, is in reality acting in his own or another's interest, and adversely to that of his principal."

The doctrine of the text is supported by abundant authority. See cases cited in the note.

In *Innerarity v. Bank*, 139 Mass. 332, it is said:

" While the knowledge of an agent is ordinarily to be imputed to the principal, it would appear now to be well established that there is an exception to the construction or imputation of notice from the agent to the principal in case of such conduct by the agent as raises a clear presumption that he would not communicate the fact in controversy; as where the communication of such a fact would

necessarily prevent the consummation of a fraudulent scheme which the agent was engaged in perpetrating."

An instructive case upon this subject is *Thompson v. Cartwright*, 33 Beav. 178. In that case it appeared that one Montriou was the attorney of one Downes, and received a conveyance in Downes' interest. He had knowledge of the existence of a prior incumbrance, and the question was whether his knowledge was the knowledge of Downes. The rule is very clearly stated by the master of the rolls:

" I take the rule to be, generally, that the client must be treated as having had notice of all the facts which, in the same transaction, have come to the knowledge of the solicitor, and that the burden of proof lies on him (the client) to show that there is a probability, amounting to a moral certainty, that the solicitor would not have communicated that fact to his client. The question here is whether the applicant, Mr. Downes, discharges the burden so imposed on him. Upon the whole, I think that he does. Mr. Montriou, as his solicitor, knowing of the mortgage affecting the property, prepares a deed by which the owner of the property covenants that there is no mortgage, charge, or incumbrance on it or affecting it. He prepares this deed, and causes his client, the grantor, to execute to his client, the grantee, a solemn instrument, by which he deliberately puts his hand and seal to an assertion which is false. I think that this amounts to a solemn declaration by Mr. Montriou to his client that he, Mr. Montriou, was ignorant of any charge affecting the property, and that he did not believe that any such charge existed."

This case is not distinguishable in principle from the present. It cannot be doubted that the defendant's agent had every reason to believe that the policy, which was itself an assertion of his authority, would be conveyed to the plaintiffs by Knaggs & Plum as and for a binding contract. Indeed, it could have been placed in their hands by him for no other purpose. To permit the company which he represents to assert now that the plaintiffs had notice, through Knaggs & Plum, of the want of

authority, would be to imply notice to the principals which defendant's agent had every reason to anticipate would not in fact be given them. No such injustice can be sanctioned. The conclusion of the circuit judge was right.

The judgment will be affirmed, with costs.

The other Justices concurred.