HOEKZEMA *v.* VAN HAFTEN.

1. SALES—CATTLE AFFLICTED WITH CONTAGIOUS ABORTION—STATUTES —RECOVERY OF PURCHASE PRICE.

A sale of herd of cattle, some of which the sellers knew were infected with contagious abortion, which fact was unknown to buyers, was void since such sale was contrary to statute and buyers were entitled to recover purchase price even in the absence of express statutory provision for such recovery (1 Comp. Laws 1929, § 5178).

2. CONTRACTS—ILLEGALITY—PLEADING.

The court, *sua sponte*, will take notice of the illegality of a contract that was contrary to a statute and such defense of illegality need not be pleaded.

3. SAME—RATIFICATION—ILLEGALITY.

Ratification does not legalize an illegal contract.

4. SALES—DISEASED CATTLE—STATUTES—RATIFICATION.

A sale of diseased cattle, void because forbidden by statute enacted to protect the public against very serious and dangerous diseases, cannot be ratified (1 Comp. Laws 1929, § 5178).

5. SAME—PAYMENT OF INTEREST ON NOTE—ILLEGAL SALE OF DISEASED CATTLE.

Payment of interest on note given in purchase of herd of cattle infected with contagious abortion did not ratify contract that was void because sale was prohibited under criminal penalty and as a matter of general policy nor bar recovery by buyers (1 Comp. Laws 1929, § 5178; § 5195, as amended by Act No. 319, Pub. Acts 1937).

6. CONTRACTS—ITEMIZED PRICE LIST—SEVERABLE CONTRACT.

Contract for purchase of dairy farm whereby $18,000 was paid for the farm together with buildings thereon and $8,000 for personal property thereon after allowance of discount from total price of $8,384.50 for itemized price list of personal property was a severable one as to personalty in view of the fact that a specific price was put on each item.

Illegal bargain in general, see 2 Restatement, Contracts, §§ 512–609; partly illegal consideration, § 606.

Agent's knowledge of fraud not imputed to principal where agent's knowledge is acquired while acting in opposition to principal's interest, see 1 Restatement, Agency, § 282 (1), illustration 3.

7. SALES—NOTE IN PAYMENT OF ACCOUNT INCLUDING VOID ITEMS.
   A note given for an account, some items of which include prices
   of illegal sales that are wholly void, does not constitute pay-
   ment or satisfaction of the account and the seller may ignore
   the note and recover for the legal items of the account.

8. SAME—SEVERABLE CONTRACT—TENDER—VOID ITEMS.
   A tender of all personal property sold purchasers of fully-
   equipped dairy farm was not prerequisite to buyers' recovery
   from sellers for purchase price of diseased cattle illegally sold
   to plaintiffs where contract listed specific price for cattle as
   upon every other item, the contract being severable (1 Comp.
   Laws 1929, § 5178).

9. PRINCIPAL AND AGENT—KNOWLEDGE OF DAIRY FARM OPERATORS
   THAT CATTLE WERE INFECTED.
   Knowledge of operators that cattle on fully-equipped dairy farm
   were infected with contagious abortion before sale was finally
   consummated may not be imputed to buyers thereof for whom
   operators worked and to whom they were related, where it
   appears operators were acting for themselves and not for
   buyers when refraining from disclosing such information (1
   Comp. Laws 1929, § 5178).

10. SAME—AGENT'S KNOWLEDGE OF FRAUD.
    Agent's knowledge of fraud will not be imputed to principal,
    a buyer, where such knowledge is withheld while agent acted
    in opposition to principal's interest in pursuance of seller's
    inducements.

11. APPEAL AND ERROR—AMOUNT OF VERDICT—BASIS.
    The amount of a jury's verdict will not be disturbed, as a
    general rule, if there is any reasonable basis for it.

12. SALES—VOID ITEMS—OFFSET.
    Where sellers knew herd of cattle sold buyers were infected with
    contagious abortion and buyers did not know of the infec-
    tion, the sale was illegal and the buyers were entitled to have
    full amount of the purchase price of the cattle less amount
    received from sale thereof offset against amount claimed by
    sellers on note given by buyers for the cattle and other per-
    sonalty, upon purchasing fully-equipped dairy farm (1 Comp.
    Laws 1929, § 5178).

13. SAME—CONTAGIOUS ABORTION—COST OF DISINFECTION—QUESTION
    FOR JURY.
    Whether buyers of fully-equipped dairy farm on which the cattle
    were infected with contagious abortion at the time of sale

are entitled, in their action to recover purchase price of cattle, to cost of disinfecting barn and pasture *held*, for jury (1 Comp. Laws 1929, § 5178).

14. SAME—APPORTIONMENT OF DISCOUNT FOR ILLEGAL ITEMS.

Where personal property on fully-equipped dairy farm was itemized and total discounted and sale of cattle as part of the personalty was illegal because they were infected with contagious abortion, buyers who were entitled to recover purchase price of cattle are charged with respective portion of discount (1 Comp. Laws 1929, § 5178).

15. COSTS—REVERSAL—NEW TRIAL.

Costs of both trial and appellate courts are allowed buyers where new trial is ordered upon reversal for erroneous instructions limiting amount buyers of fully-equipped dairy farm were entitled to set off for recovery of purchase price of diseased cattle against note given in payment for personal property including the cattle (1 Comp. Laws 1929, § 5178).

Appeal from Ottawa; Miles (Fred T.), J. Submitted October 25, 1945. (Docket No. 63, Calendar No. 43,188.) Decided January 7, 1946.

Action by George Hoekzema and wife against Edward Van Haften and Ray Van Haften for amount of money paid for cattle. Cross declaration by defendants against plaintiffs on promissory note. Verdict and judgment for defendants. Plaintiffs appeal. Reversed and new trial granted.

*Fred P. Geib,* for plaintiff.

*Jarrett N. Clark,* for defendants.

BUTZEL, C. J. In February, 1944, plaintiff George Hoekzema, a building contractor, with little if any experience in farming, advertised in a Grand Rapids newspaper for a fully-equipped dairy farm which he desired to purchase as an investment. It was to be operated and managed by his niece, Mrs. Weaver, and her husband, an experienced farmer. Edward and Ray Van Haften, defendants herein,

responded to the advertisement. Hoekzema and Mr. Weaver visited the Van Haften farm a number of times and finally Hoekzema and wife agreed to purchase it from defendants for $26,000. They paid down $500 on March 28, 1944, without a receipt being given by the sellers or any written contract being made. The sellers wanted the closing of the deal postponed for certain reasons. They also remained on the farm so as to operate it in the spring, and, if the sale was not made, no damage because of lack of crops, et cetera, would ensue. On May 18th, Mr. and Mrs. Weaver moved to the farm but defendants remained on the premises and lived in the tenant house. They assisted with the work on the farm. The final settlement and sale was not made until July 8, 1944, when Hoekzema paid $18,000 cash and gave his 90-day note for $7,500. The deed was acknowledged July 8, 1944.

We shall hereafter refer to Mr. and Mrs. Hoekzema whether they were acting jointly or severally as plaintiffs. Plaintiffs bought the realty as tenants by the entirety. Evidently they also bought the personal property jointly, inasmuch as the note was signed by both of them. All parties concede that July 8, 1944, was the date on which the deal was closed. Each item of personal property and price asked was listed. $18,000 was paid for the farm together with the buildings thereon. The personal property amounted to $8,384.50, including 19 cows at $3,040, 8 heifers at $1,000, 1 bull at $100, and 9 calves at $540, or a total of $4,680 for the cattle. A discount of $384.50 was allowed from $8,384.50, the price for the personal property, thus reducing it to $8,000.

There is much testimony as to whether or not Mr. Weaver knew that the cattle were diseased at the time the deal was closed. Prior to the date of

closing, it developed that the entire herd had been ·exposed to Bang's disease, also known as contagious abortion or brucellosis. On April 12, 1944, a doctor who purchased two cows from defendants the previous October had a test made by the Michigan department of agriculture and found that one of these purchased from defendants had Bang's disease, while the rest of his herd was free from it. He notified defendants shortly thereafter. On or about June 10, 1944, a dead calf was found in defendants' pasture lot. Defendants had the blood of the mother of the calf tested. It was found that she had Bang's disease. Mr. Weaver testified that this fact was not disclosed to him. The dead calf lay where all the other cattle had access to it before it was found. Between July 6 and 8, 1944, two more cows had premature calves and four cows were known to be barren at that time. When Mr. Weaver had a test made of a cow which aborted on July 6th and the test showed the presence of Bang's disease, he testified that he then learned for the first time the result of the test of June 10, 1944. According to Weaver one of the defendants had previously told him that the test of June 10th showed that the cow was healthy. Weaver testified that he charged defendants with lying to him about the first test and that they asked him to say nothing about it to plaintiffs and assured him that everything would come out all right. After plaintiffs purchased the farm, and prior to October 6, 1944, 6 more cows gave birth to dead calves and another one bore a weak live calf premature by a month. Plaintiffs sold one cow for $47.10 in September, claiming that it was practically of no value whatsoever, not even for meat. On October 6, 1944, plaintiffs paid interest of $93.75 on the note that became due on that date, and defendants granted an extension of 30 days. How-

ever, before and after the 30 days had expired, plaintiffs met one or both of the Van Haftens several times, one time being at a bank, and plaintiffs asked them to take the cattle back or make an adjustment. Plaintiffs refused to pay anything further on the note until an adjustment was made. A test of the herd was suggested. On November 30, 1944, the herd was tested by a veterinarian and some 18 or 19 of the cows were shown to be infected with Bang's disease. A letter was written on December 8, 1944, to defendants by plaintiffs' counsel advising them that the cattle were theirs and asking proper credit upon the note. On January 16, 1945, a test was made by the State authorities. It showed that out of a herd of 27, 17 cows were afflicted. On January 17, 1945, the entire herd was quarantined by the State authorities. On February 18, 1945, 11 of the cows, with the consent of the authorities, were sold to be butchered for the sum of $857.40. This together with the $47.10 realized from the previous sale brought the total amount to $904.50. The bull had also been sold for $100.

Plaintiffs brought suit to recover the amounts paid for the cattle. In their brief, they stress the claim that the sale of the herd was illegal, absolutely forbidden by law under penalty, and that they are entitled to have the outstanding note reduced by the amounts paid for the cattle less the sums they have received. They had offered to return whatever cattle they had on hand. They also asked damages consisting of the cost of disinfecting their stables and pastures so as to free them from any taint of the disease, and also payment for taking care of the cattle less such sums as they received from the milk. Defendants denied many of the claims of plaintiffs and in a cross-declaration sought judgment for the $7,500 note and interest, and payment

for labor, et cetera, performed for plaintiffs on the farm.

There cannot be any question but that defendants sold plaintiffs a herd of diseased cattle, nor that they knew that some of the herd was diseased on July 8, 1944, when the deal was consummated. Edward Van Haften testified as follows when questioned in regard to the date of the closing of the deal:

"*Q.* But you did know at that time of those abortions?

"*A.* I did.

"*Q.* When you were taking $26,000 from Mr. Hoekzema you knew of the abortions?

"*A.* Yes.

"*Q.* You didn't tell him?

"*A.* No."

The record is convincing that plaintiffs knew nothing about the fact that the cows were afflicted with Bang's disease on July 8, 1944. It is quite evident that neither Mr. nor Mrs. Weaver disclosed the condition to them. It is claimed by Mr. Weaver that he did not know that Bang's disease existed when the first test was made and later when he did discover it, he was requested by defendants not to disclose it to plaintiffs. The Weavers were not present at the closing of the transaction. They merely had been hired to look after the farm and it was to their particular self-interest to have the deal go through so that they would be assured of a good home and livelihood.

Plaintiffs' main argument is that the entire sale was illegal and void, and that they cannot be called upon to pay for diseased cattle sold contrary to statute. Testimony showed that Bang's disease is highly contagious and infectious and very dangerous as the milk from such cows when not pasteur-

ized is dangerous to human beings and frequently is the cause of undulant fever. The statute, 1 Comp. Laws 1929, § 5178 (Stat. Ann. § 12.379), forbids a person keeping in his possession a domestic animal infected with a contagious, infectious or communicable disease, or permitting it to run at large or keeping it where other domestic animals not affected by or previously exposed to such disease may be exposed to contagion or infection. It also absolutely forbids the sale of any such animal or any other animal that has been exposed to contagion or infection, et cetera. The statute further provides that anyone found guilty of its violation shall be punished by a fine of not less than $10 nor more than $500, or imprisonment in the county jail for not more than six months, or both such fine and imprisonment in the discretion of the court.* In *Groves* v. *Jones,* 252 Mich. 446, this statute was held to be applicable to cattle with contagious abortion and it also again was held that a contract founded on acts. prohibited by statute under penalty is void although the statute does not expressly so provide. Also, see *Cashin* v. *Pliter,* 168 Mich. 386 (Ann. Cas. 1913 C, 697); *Turner* v. *Schmidt Brewing Co.,* 278 Mich. 464. The trial judge, however, stated that plaintiffs could only recover for breach of warranty, and a count was added to the declaration alleging such breach, and recovery was limited thereto. The sale was illegal and plaintiffs were entitled to recover on that theory. Defendants, however, claim that plaintiffs did not act promptly although plaintiffs knew that some of the cattle had Bang's disease. Plaintiffs in reply contend that they were not cattlemen and did not proceed until they had a complete test made.

---

* See 1 Comp. Laws 1929, § 5195, as amended by Act No. 319, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 5195, Stat. Ann. 1945 Cum. Supp. § 12.396).—REPORTER.

Defendants also claim that payment of interest on the note in question ratified the contract or showed acquiescence. The court, *sua sponte,* will take notice of the illegality and the defense of illegality need not be pleaded. *Heffron* v. *Daly,* 133 Mich. 613; *Meek* v. *Wilson,* 283 Mich. 679. Ratification does not legalize an illegal contract. The statute was enacted to protect the public against a very serious and dangerous disease, and a sale void because forbidden by statute cannot be ratified. There may not be subsequent ratification so as to prevent recovery when the sale is prohibited under criminal penalty and as a matter of general policy. See *Turner* v. *Schmidt Brewing Co., supra; Fine Arts Corp.* v. *Kuchins Furniture Manfg. Co.,* 269 Mich. 277.

Defendants contend that the entire sale being one transaction, plaintiffs should have tendered all of the property back to defendants. The contract was a severable one. A specific price was put upon the cattle as upon every other item. Where a note is given for an account, some items of which include prices of illegal sales, and, therefore, wholly void, it does not constitute payment or satisfaction of the account, and the seller may ignore the note and recover for the legal items of the account. *Shaw* v. *Carpenter,* 54 Vt. 155 (41 Am. Rep. 837). This case as well as others are cited with approval in *Smilansky* v. *Mandel Bros.,* 254 Mich. 575, where this court said:

"The division of the claim into good and bad items is done from practical rather than technical considerations unless the contract otherwise demands."

Defendants further contend that plaintiffs are bound by the knowledge that Weaver had in regard

to the existence of the Bang's disease at the time that the sale was consummated. Both Mr. and Mrs. Weaver claim they were asked not to disclose the conditions to plaintiffs. At the time the seriousness of the situation was not known. The Weavers were anxious to go through with the deal. The Weavers were acting for themselves, not for plaintiffs, when they refrained from notifying plaintiffs at the request of defendants. They certainly were not acting in plaintiffs' interest. In any event, they were acting in opposition to the interest of their principals to whom the knowledge of such fraud cannot be imputed. *Detroit Piston Ring Co.* v. *Wayne County & Home Savings Bank,* 252 Mich. 163 (75 A. L. R. 1273); *Miller* v. *Scottish Union & National Ins. Co.,* 101 Mich. 49 (45 Am. St. Rep. 389); *Brown* v. *Harris,* 139 Mich. 372; *Tapert* v. *Lehmann,* 259 Mich. 447; *Title Bond & Mortgage Co.* v. *Carpenter,* 240 Mich. 319; *Kane* v. *Detroit Life Ins. Co.,* 204 Mich. 357; *Valley Jitney Jungle Co.* v. *Hamady,* 264 Mich. 354; *State Savings Bank of Ionia* v. *Montgomery,* 126 Mich. 327; also, see 104 A. L. R. 1246. The defendants knew of the diseased condition when they sold the herd. It taxes one's credulity to believe that plaintiffs would have purchased the herd had they known of its condition. In any event, it was illegal to sell the cattle without regard to knowledge on the part of the buyers. Defendants got rid of a diseased herd of cows that was unfit for dairy purposes and which was worth far less than the amount paid. On the theory of breach of warranty, the jury allowed $856.40. The judge instructed the jury that if the Weavers were induced not to talk, plaintiffs could not be bound by any knowledge they had. Evidently the jury did not believe that plaintiffs were affected by Weaver's knowledge, for they allowed $856.40 as plaintiffs'

damages and allowed defendants, on the other hand, the full amount of his note and interest, and judgment was rendered for the difference between the latter amount and the former. The general rule is that the amount of the jury's verdict will not be disturbed if there is any reasonable basis for it. But under any theory we find none in the instant case. Plaintiffs were entitled to a larger verdict as an offset against the claim. The court should have instructed the jury that as a matter of law the contract was an illegal one, forbidden by law, and plaintiffs were entitled to have the full amount of the purchase price of the cattle, less the sums they had received from sales, offset against the amount claimed by defendants. Defendants are still entitled to accept the offer of the return of the diseased cattle not sold. There may be some question to be determined by a jury whether plaintiffs are entitled to any extra amount for disinfecting the barn and pasture. According to the record it is claimed that sunshine and a thorough cleansing of the barn with disinfectant will accomplish this. This, however, is a jury question.

Further objection is made to the allowance of costs to defendants in the lower court. In view of our decision, plaintiffs will recover costs of the lower court.

It will be noted that there was a discount allowed on the sale of the personal property. We believe this discount should be apportioned so as to charge plaintiffs with that portion of the discount as the price of the cattle bears to the entire value placed upon all the personal property.

Judgment reversed, with costs of both courts to plaintiffs and new trial ordered.

CARR, BUSHNELL, SHARPE, BOYLES, REID, NORTH, and STARR, JJ., concurred.