HOEKZEMA *v.* VAN HAFTEN.

1. SALES—BREACH OF WARRANTY—DAMAGES—EVIDENCE.
   In action for money paid for diseased cattle and because of con-
   taminated condition of dairy farm sold plaintiffs, evidence as
   to taxes, operating charges and legal expenses were properly
   excluded from jury's consideration of damages suffered within
   language of declaration.

2. APPEAL AND ERROR—INADEQUACY OF DAMAGES—REMITTITUR—EVI-
   DENCE.
   Such error as there may have been by reason of inadequacy
   of damages as determined by jury *held*, cured by remittitur
   imposed and accepted, in view of the testimony presented.

3. TRIAL—CONFLICTING     TESTIMONY—INSTRUCTIONS—MANNER     OF
   EFFECTING CONTAMINATION OF DAIRY FARM.
   In action to recover damages because of diseased condition of
   dairy herd and because of contaminated condition of dairy
   farm sold plaintiffs, it was a problem for the jury to deter-
   mine as to how contamination of herd and premises was ef-
   fected, where testimony on the matter was in conflict since
   the weight to be accorded the testimony of a witness is a mat-
   ter for the jury under proper instructions.

4. APPEAL AND ERROR—VERDICT—EVIDENCE—INSTRUCTIONS.
   Under defendants' cross declaration for wages for services
   rendered plaintiffs after surrender to them of possession of
   fully-equipped dairy farm, evidence *held*, sufficient to sustain
   jury's finding for defendants under instructions declared ade-
   quate and proper.

5. TRIAL—SPECIAL QUESTIONS—SUBMISSION TO JURY.
   When special questions, correct in form and substance, and prop-
   erly submitted, are offered, the trial judge has no discretion,
   and his refusal to submit them to the jury constitutes error (3
   Comp. Laws 1929, § 14290).

6. SAME—REFUSAL TO SUBMIT SPECIAL QUESTIONS—FORM.

Refusal to submit to jury special questions which were not single, short sentences readily answerable by yes or no *held*, proper (3 Comp. Laws 1929, § 14290).

7. APPEAL AND ERROR—AMOUNT OF JUDGMENT.

In action to recover money paid for diseased herd of cattle and because of contaminated condition of fully-equipped dairy farm sold plaintiffs, judgment of $7,416.74 as modified by remittitur of $1,916.74 *held*, not excessive, nor was amount plaintiffs still owed defendants on unpaid purchase price unduly emphasized.

8. COSTS—TRIAL COURT—SUPREME COURT.

Where plaintiffs prevailed in trial court, in that the damages were assessed in reduction of an admitted amount due and unpaid on the purchase price, costs in such court are allowed plaintiffs but where, on appeal, plaintiffs, as appellants, have not prevailed on their second appeal, defendants, as appellees, are entitled to costs in the Supreme Court.

9. APPEAL AND ERROR—COSTS—REMAND FOR CORRECTION OF RECORDS.

Where trial court erroneously awarded defendants costs on the trial, after taxation of costs in Supreme Court, case is remanded for purpose of correction of records.

Appeal from Ottawa; Miles (Fred T.), J. Submitted January 14, 1948. (Docket No. 67, Calendar No. 43,963.) Decided April 5, 1948.

Action by George Hoekzema and wife against Edward Van Haften and another for amount of money paid for cattle. Cross declaration by defendants against plaintiffs on promissory note. Verdict and judgment for defendants. Plaintiffs appeal. Affirmed.

*Fred P. Geib* (*Clem H. Block,* of counsel), for plaintiffs.

*Jarrett N. Clark* and *Linsey, Shivel, Phelps & Vander Wal,* for defendants.

BUSHNELL, C. J. This is an appeal by plaintiffs George Hoekzema and wife from a judgment en-

tered in favor of defendants Edward Van Haften and his brother, Ray Van Haften, in a new trial ordered in *Hoekzema* v. *Van Haften*, 313 Mich. 417.

The facts reported in that opinion need not be repeated here. At the second trial, because of the opinion rendered by this Court and certain stipulated facts, the gross unpaid amount due defendants on the purchase of a dairy herd, farm, and equipment was $10,093.59. From this the jury deducted $2,876.85, which was determined by it to be the amount plaintiffs were damaged because of the contaminated condition of the farm and buildings and the diseased condition of the dairy herd sold to them, less an off-set item of $200, which the jury found should be charged to plaintiffs for work performed by defendants after the sale. The net verdict in favor of defendants was therefore $7,416.74.

On plaintiffs' motion for a new trial a remittitur of $1,916.74 was ordered in lieu thereof, which was accepted by defendants, thus reducing the judgment in favor of defendants to $5,500, and the new trial was denied.

Plaintiffs on this second appeal seek another new trial with instructions as to the items of damages that may be recovered therein. It is argued that because of errors in the second trial the jury did not correctly determine the amount due defendants, which plaintiffs contend should not have exceeded $620.96.

There is a wide difference in the testimony presented with respect to the cost of keeping and feeding this herd of diseased cattle involved in this litigation. Melvin Weaver, a nephew of plaintiffs, who managed and operated the farm they had purchased from the Van Haftens, testified that the total cost was $7,698.08. Edward Van Haften testified that this cost over the same period of 16 months was

$3,708. The jury determined this cost to be only $2,876.85.

Appellants argue that this jury of "fellow farmers" of the Van Haftens exhibited prejudice against Hoekzema, a Grand Rapids contractor. They say that this prejudice was increased by the exclusion of testimony offered in support of damages suffered beyond feed and labor costs.

We quote the following in order to show what was excluded:

"*Q.* Up until the time this case came down from the Supreme Court can you tell us how much legal expense you had incurred?

"*Mr. Clark:* I object to that, it is immaterial.

"*The Court:* Objection sustained.

"*Q.* Can you give us the items of cost that were not included in yesterday's testimony. I mean the taxes and the operating charges for running the farm other than charges for labor and feed? For 1944 and 1945?

"*A.* Yes.

"*Q.* Will you tell us what they were?

"*Mr. Linsey:* I object to that, your Honor. That certainly can't be an element of damage here.

"*The Court:* Objection sustained.

"*Mr. Geib:* If the court please, the plaintiff rests."

The items of taxes, operating charges and legal expenses were properly excluded from the jury's consideration of damages suffered within the language of the declaration. *Franklin Co.* v. *Buhl Land Co.*, 264 Mich. 531.

The amount of damages as determined by the jury may have been inadequate in the light of the testimony, but that was cured by the remittitur imposed and accepted. This determination by the trial judge was as fair and accurate as could be ascertained from the testimony presented.

In our former opinion, 313 Mich. 417, 427, we said:

"There may be some question to be determined by a jury whether plaintiffs are entitled to any extra amount for disinfecting the barn and pasture. According to the record it is claimed that sunshine and a thorough cleansing of the barn with disinfectant will accomplish this. This, however, is a jury question."

There is a sharp dispute in the record as to how the Bang's disease with which the dairy herd was infected was brought to the farm. Defendants claim that it might have been caused by Weaver's lack of care of the barn and premises and that there was none in the herd when it was turned over to plaintiffs. Ray Van Haften, one of the defendants, testified:

"We always keep our farm in good condition. We sterilized with lime and solution."

As to this question, the jury was charged as follows:

"With reference to this claim, I charge you that if you find from the evidence that plaintiff has sustained damage because of the farm being contaminated, as distinguished from the herd, that plaintiff is entitled to recover such damages as have been established by the evidence. And of course, you will have to determine that amount and state the same— or you determine that amount.

"Now, in connection with that, I told you a while ago that the plaintiff claims that this farm has been contaminated and that he has been damaged thereby.

"On the other hand, the defendants claim they didn't contaminate the farm, that the farm was contaminated by the plaintiffs through and by their employees. And so if you determine that the plain-

tiffs themselves contaminated the farm, then I say they couldn't recover damages for contaminations, if they were to blame themselves for contaminating it.''

Appellants argue that the jury was thereby permitted ''to find that the farm as distinguished from the herd was not contaminated by defendants.'' The conflicting testimony on this question is analyzed and that offered by defendants is characterized by appellants, in part at least, as false.

The weight to be given the testimony of various witnesses was a problem for the jury. *Davis* v. *Buttars,* 201 Mich. 244, and *Faulkner* v. *Parish Manufacturing Co.,* 201 Mich. 182. The charge given with respect thereto was proper and in accordance with the view taken by this Court in the opinion rendered in the first review.

The jury was further instructed as follows:

''Upon the question of the amount of damage to plaintiffs arising out of the fact that the farm was contaminated, if there is evidence of damage, you may award such an amount as you find is covered by the evidence.''

Mr. Linsey, attorney for defendants, then said:

''*Mr. Linsey:* If the court please, I wouldn't want to sit here and have that charge go to the jury without raising some question, because there is no proof in the record of that.

''*The Court:* I understand that.

''*Mr. Linsey:* I just want my—I want that put on the record.

''*The Court:* That is all right. I am going to say to the jury that this jury are made up largely of farmers, they know about these things, but here is evidence that Bangs disease was on the place. You heard all this evidence about what will remove Bangs disease. Sunshine, I understand, sunshine, various things can be done, and so on. This hap-

pened a couple of years ago or over. I think that you have heard the testimony as to the facts and the fact that nobody can come on and say, well, that damage would be exactly so much because that is impossible. Still, if you find this farm has been contaminated and is contaminated because of this disease, you may allow it by such an amount as will, in your judgment, fairly compensate him for the damage of contamination. But, as I said to you, if you should find that this contamination was caused by the plaintiffs' employee, then you cannot allow anything for contamination.

"*Mr. Geib:* If the court please, I ask leave to make a suggestion, if I may, that if that charge is. to go to the jury, I request the additional charge that the jury cannot find that Weaver brought that contagion to the farm unless they find it by a preponderance of the evidence.

"*The Court:* Well, that is true."

Appellants say there was no "lawful evidence" to sustain defendants' claim that plaintiffs were indebted to them for a certain wage item. This question does not merit extensive discussion. Both of the Van Haftens testified that they worked on the farm after July 1st, helping with the harvesting and threshing, and were not paid for their services, which they said were worth $200.

The court's charge to the jury with respect to this item was adequate and proper.

Plaintiffs requested the court to submit the following special questions to the jury:

"1. What is the correct state of the account between plaintiffs and defendants for caring for, feeding and selling the defendants contaminated herd of cattle?

"(a) Total credits due plaintiffs     $........
"(b) Total credits due defendants     $........
"     Balance due Plaintiff or
          Defendant                    $........

"2. What damage did plaintiffs sustain by reason of the fact that the farm, as distinguished from the herd, was contaminated by Bang's disease?"

We recognize that it has always been the law in this State that when special questions, correct in form and substance, and properly submitted, are offered, the trial judge has no discretion, and his refusal to submit them to the jury constitutes error. *Babbitt* v. *Bumpus,* 73 Mich. 331 (16 Am. St. Rep. 585); *Zucker* v. *Karpeles,* 88 Mich. 413; *Harbaugh* v. *People, ex rel. Cicott,* 33 Mich. 241; *Sherwood* v. *Railway Co.,* 82 Mich. 374 (4 Am. Neg. Cas. 100); and the numerous other authorities upon this point. The submitted questions should not have been submitted because they are obviously not in conformity with the statutory requirements that they "shall be each in single, short sentences readily answered by yes or no." 3 Comp. Laws 1929, § 14290 (Stat. Ann. § 27.1019).

The judgment, as modified by the remittitur was not excessive, nor did the trial judge unduly emphasize the amount that plaintiffs admittedly still owed defendants on the unpaid purchase price of the dairy herd, farm, and its equipment. The important question was how much should be deducted from this unpaid balance for the damages which plaintiffs suffered by reason of the diseased condition of the cattle.

The trial judge had this to say on the subject of costs in the opinion he filed on plaintiffs' motion for a new trial:

"This subject has plagued the court throughout this case; the plaintiffs have insisted that they are entitled to costs, and defendants have insisted, as the amount of their recoupment exceeds the amount of allowance to plaintiffs, they are entitled to costs.

"When this case was before the Supreme Court, it did not see fit to help us in the matter. They content themselves with: 'Further objection is made to the allowance of costs to defendants in the lower court. In view of our decision plaintiffs will recover costs of the lower court;' the decision reversed the 'lower' court and granted a new trial.

"Judge Searl, in his P & P (Pleading and Practice), § 465 fails to discuss or decide. But he does say that if the set-off is equal to plaintiffs' demand, the verdict should be no cause of action and so on.

"3 Comp. Laws 1929, § 14136 (Stat. Ann. § 27.830) declares that 'judgment shall be rendered for the defendant.' But no mention is made of costs. However, we see no logic or reason why, if 'judgment' is for a defendant, he is not entitled to costs.

"Much argument is directed to the deceptions practiced. The court has pointed out, in the absence of the jury, on the trial that the 'TANGLED WEB' was not woven by one party alone. This case would never have arisen if both parties to this suit had not entered upon the plan to keep the realtors from collecting a commission. The 'sale' would have been made in March, 1944, at a time when the evidence shows that defendants did not 'know' or even have reason to suspect any disease in the herd. Probably both expected to reap some advantage thereby."

Plaintiffs prevailed in the lower court in that they had their damages assessed in reduction of an admitted amount due and unpaid on the purchase price. Therefore, plaintiffs should have been allowed costs below. They have, however, as appellants not prevailed here on their second appeal and, therefore, defendants, as appellees, are entitled to their costs in this Court. After these costs are taxed the cause must be remanded to the trial court for correction of its records so that the costs we direct to be assessed in the lower court may be de-

ducted from the judgment entered there for defendants, and that judgment corrected accordingly and the costs there allowed defendants, vacated.

Judgment affirmed, with costs in this Court to defendants and costs in lower court to plaintiffs. Remanded for correction of costs.

SHARPE, BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.