David W. ALLARD, Jr., Trustee of DeLorean Motor Company, Plaintiff,

v.

ARTHUR ANDERSEN & CO. (USA), Arthur Andersen & Co. (Republic of Ireland), and Arthur Andersen & Co., (United Kingdom), Defendants.

No. 84 Civ. 7703 (MBM).

United States District Court, S.D. New York.

April 2, 1996.

490

Zachary Shimer, Michael D. Hess, Timothy M. Hughes, Chadbourne & Parke, New York City, for Plaintiff.

James D. Zirin, James J. Sabella, Brenda F. Szydlo, William C. Rand, Brown & Wood, New York City, for Defendants.

MUKASEY, District Judge.

David W. Allard, Jr. ("Trustee"), the bankruptcy trustee for DeLorean Motor Company ("DMC"), brings this securities fraud action against the bankrupt company's former auditors, the accounting firm Arthur Andersen & Co. ("AA"). AA has moved for summary judgment on all 12 claims in the Trustee's Second Amended Complaint. As explained

below, the motion is granted in part and denied in part.

## I.

In a companion case also before the court, *Department of Economic Dev. v. Arthur Andersen & Co.* ("the DED Action"), the British government has sued AA for damages arising from investments in DMC's Northern Ireland manufacturing plant. The facts giving rise to both actions are summarized in an opinion ("the DED Opinion") also issued today addressing AA's motion for summary judgment on all claims in the DED Action. *See* 924 F.Supp. 449, 453–55 (S.D.N.Y.1996). Familiarity with the DED Opinion is assumed for present purposes.

The Trustee commenced this action in October 1984. The Trustee's Second Amended Complaint (Zirin Aff. Ex. 3), filed in September 1988, asserts 12 claims: (1) malpractice, (2) negligence, (3) breach of contract, (4) unjust enrichment, (5) common law fraud, (6) aiding and abetting common law fraud and/or breach of a fiduciary duty, (7) securities fraud under Rule 10b–5, (8) aiding and abetting securities fraud under Rule 10b–5, (9) violation of 18 U.S.C. § 1962(c) (RICO), (10) violation of 18 U.S.C. § 1962(a) (RICO), (11) aiding and abetting RICO violations, and (12) violation of Mich.Comp.Laws § 600.2919a (1992).

The parties disagree as to whether Michigan or New York law governs the state common law claims. The Trustee insists that Michigan law applies because DMC was a Michigan corporation and because most of the audit work under scrutiny here was performed by Michigan-based AA partners in AA's Detroit office. (Pl.Mem. at 117–19) AA argues that New York law should apply, primarily because most of the commercial transactions incident to the GPD contract occurred in New York. (Def.Rep.Mem. at 19–22) As explained below, resolution of the issues raised here is unaffected by any relevant differences between New York and Michigan law. Therefore it is not necessary at this time to choose the applicable law.

## II.

AA argues for summary judgment on the issue of damages on several grounds equally applicable to all or most of the claims in the Second Amended Complaint.

First, AA argues that the Trustee cannot prove loss causation for any of his claims because economic recession, not the alleged fraud, caused the demise of DMC. (Def. Mem. at 5) For the reasons stated in the DED Opinion, 924 F.Supp. at 463–64. I find that material issues of fact preclude summary judgment on that ground.

■ Second, AA asks the court to grant summary judgment as a sanction against the Trustee for the Trustee's allegedly unresponsive answers to AA's interrogatories. (Def.Mem. at 6–12) AA complains that the Trustee has refused to explain how he calculated the $100 million ad damnum figure in the complaint. (Second Am.Compl. ¶ 159)

■ Under Fed.R.Civ.P. 37(b)(2), a court may sanction a party who "fails to obey an order to provide or permit discovery" by ordering a judgment against that party. However, that provision has no application here because AA has not moved to compel the Trustee to provide more information. *See Salahuddin v. Harris,* 782 F.2d 1127, 1131 (2d Cir.1986) (court may not order a dismissal under Rule 37(b)(2) unless a court order is in effect and has been violated). Of course, the Trustee still is subject to Fed. R.Civ.P. 56(e), which requires a nonmovant plaintiff to "set forth specific facts showing that there is a genuine issue for trial" to defeat a motion for summary judgment. But that provision does not compel a plaintiff to provide an exact dollar figure for his damages before trial; the plaintiff need show only that he did in fact suffer some damages. *See V.S. International, S.A. v. Boyden World Corp.,* No. 90 Civ. 4091, 1993 WL 59399, \*7 (S.D.N.Y. Mar. 4, 1993) ("if plaintiffs demonstrate a genuine issue of fact as to the existence of actual damages ..., then summary judgment ... is inappropriate even if the precise amount or extent of the damages is still somewhat uncertain"); *Carswell Trucks, Inc. v. International Harvester Co.,* 334 F.Supp. 1238, 1239 (S.D.N.Y.1971) ("it is not

necessary that the precise amount of damages be readily ascertainable").

■ Third, AA argues that DMC may not recover the allegedly misappropriated GPD contract proceeds because the limited partners of DRLP, not DMC, supplied those funds to GPD. DMC was DRLP's controlling general partner, but did not supply the funds in question. The limited partners of DRLP were several individual investors. *See* DED Opinion, 924 F.Supp. at 454. The Trustee, reasoning by analogy to the corporate law doctrine of "piercing the corporate veil," responds that DRLP was the alter ego of DMC, and that therefore DMC can recover for the losses suffered by the DRLP limited partners. (Pl.Mem. at 121)

The Trustee's analogy is unpersuasive. The Trustee correctly observes that DRLP was dominated by DMC, and that domination by a controlling shareholder can be grounds for disregarding a corporation's separate existence. But DRLP was a partnership, not a corporation. DRLP was organized under Michigan law, which provides that limited partners must refrain from "tak[ing] part in the control of the business" in order to enjoy limited liability for the obligations of the partnership. Mich.Comp.Laws § 449.1303 (1992). Contrary to the Trustee's argument that the general partner's control over the partnership amounts to an abuse of the partnership form, that control is in fact mandated by state law. Accordingly, there is no reason to disregard the entity's separate existence and attribute all of the assets of the limited partners to the unrelated general partner DMC.

As noted above, the funds supplied to GPD ostensibly for research and development were contributed by DRLP's limited partners. *See* DRLP Private Placement Mem., Zirin Aff.Ex. 17 at 37. The limited partners never assigned their claims against AA to DMC or to the Trustee, and in fact prosecuted their own securities fraud action against AA. *See Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040 (11th Cir.), *reh'g denied*, 806 F.2d 1070 (11th Cir.1986), *cert. denied*, 480 U.S. 946, 107 S.Ct. 1604, 94 L.Ed.2d 790 (1987). It follows that the Trustee has no standing to assert the rights of the DRLP limited partners, and that summary judgment must be granted in favor of AA to the extent the Trustee attempts to recover on their behalf.

■ Fourth, AA asserts that it cannot be liable for damages caused by misappropriations occurring after November 30, 1980. That was the last day of the fiscal year covered by AA's final audit report, which was issued in early 1981.

■ Although accountants may have a duty to "correct their own statements which later become false or misleading," *In re MTC Electronic Technologies Shareholders Litig.*, 898 F.Supp. 974, 988 (E.D.N.Y.1995), an accountant's mere possession of nonpublic information as to client misconduct does not necessarily give rise to a duty to disclose. *Cf. Basic, Inc. v. Levinson*, 485 U.S. 224, 238 n. 17, 108 S.Ct. 978, 987 n. 17, 99 L.Ed.2d 194 (1988) ("silence, absent a duty to disclose, is not misleading under Rule 10b–5"). However, the Trustee does not argue here that AA had a continuing duty to disclose new misconduct after the conclusion of the audit engagement. Instead, the Trustee argues that the post–1980 misappropriations were a foreseeable consequence of AA's failure to make adequate disclosures in its earlier audit reports. As explained in the DED Opinion, there is an issue of fact as to whether AA's pre–1981 audit reports were fraudulently silent as to serious misconduct. *See* 924 F.Supp. at 462–63. DeLorean had the opportunity to misappropriate funds after 1980 only because his earlier misconduct was not fully disclosed to persons such as the directors of DMC who were in a position to stop it. If the Trustee can prove at trial that AA fraudulently or negligently failed to disclose knowledge of DeLorean's misconduct in its pre–1981 audit reports, then AA may be liable for later misappropriations. That conclusion follows from the common law principle that tortfeasors generally are responsible for all injuries proximately caused by their breaches of duty. *See, e.g., Steitz v. Gifford*, 280 N.Y. 15, 20, 19 N.E.2d 661, 664 (1939); *Law Offices of Lawrence J. Stockler, P.C. v. Rose*, 174 Mich.App. 14, 436 N.W.2d 70, 81 (1989). Summary judgment as to damages

caused by post–1980 misappropriations therefore is not appropriate.

■ Fifth, AA contends that the Trustee cannot recover lost profits because he has offered only vague speculation as to how DMC would have fared absent the alleged misconduct. The Trustee answers that he is not required to provide precise estimates of DMC's lost profits.

Federal securities fraud plaintiffs generally may recover only "actual damages." 15 U.S.C. § 78bb(a) (§ 28(a) of the Securities Exchange Act of 1934) (1994). The Second Circuit has allowed "benefit of the bargain" damages under Rule 10b–5 only in the limited context "where misrepresentation is made in … tender offer and proxy solicitation materials as to the consideration to be forthcoming upon an intended merger." *Osofsky v. Zipf*, 645 F.2d 107, 114 (2d Cir.1981). Otherwise, "a plaintiff's lost future profits are not recoverable in Rule 10b–5 actions." *Three Crown Ltd. Partnership v. Salomon Bros., Inc.*, 906 F.Supp. 876, 890 (S.D.N.Y. 1995).

■ Lost profits are similarly unavailable in fraud actions under New York law; plaintiffs may recover only "out of pocket" damages that can be ascertained with reasonable certainty. *Three Crown*, 906 F.Supp. at 891; *Nager Elec. Co. v. E.J. Electric Installation Co.*, 128 A.D.2d 846, 846–47, 513 N.Y.S.2d 766, 767 (2d Dep't 1987). It does not appear that any Michigan court has specifically considered the recoverability of lost profits in fraud actions, but Michigan courts do follow the general rule that damages in fraud cases must be proved with reasonable certainty. *Hi–Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 247 N.W.2d 813, 816 (1976).

■ A plaintiff in a breach of contract action under New York law may recover damages for lost profits if he can prove (1) that the damages were caused by the breach, (2) that the loss can be proved with reasonable certainty, and (3) that damages for lost profits were fairly within the contemplation of the parties to the contract at the time the contract was executed. *Ashland Management Inc. v. Janien*, 82 N.Y.2d 395, 403–04, 604 N.Y.S.2d 912, 915–16, 624 N.E.2d 1007, 1010–11 (1993). However,

> [I]f it is a new business seeking to recover for loss of future profits, a stricter standard is imposed for the obvious reason that there does not exist a reasonable basis of experience upon which to estimate lost profits with the requisite degree of reasonable certainty.

*Kenford Co. v. Erie County*, 67 N.Y.2d 257, 261, 502 N.Y.S.2d 131, 132, 493 N.E.2d 234, 235 (1986). The Michigan Supreme Court has permitted the recovery in contract cases of lost profits ascertainable with reasonable certainty, with the admonition that "[i]f the business … has not had such a history as to make it possible to prove with reasonable accuracy what its profits have been in fact, the profits prevented are often but not necessarily too uncertain for recovery." *Fera v. Village Plaza, Inc.*, 396 Mich. 639, 242 N.W.2d 372, 374 (1976) (citation omitted).

To the extent the Trustee seeks damages for lost profits under a contract or tort theory, the claim is insufficient under both New York and Michigan law. Nowhere has the Trustee even argued that DMC would have earned profits had the company not been plagued by misconduct. The Trustee has asserted only the more modest proposition that DMC might have survived longer as an operating entity absent the alleged misappropriations. (Pl.Mem. at 135) In lieu of proof as to how much net income DMC realistically might have taken in, the Trustee offers only the vague observations that (1) before the 1982 recession "the DMC–12 had begun establishing itself" and (2) after that recession, "the United States automobile market underwent a steady expansion." (*Id.*) Conceding the validity of those observations for purposes of argument, it still does not follow that a small firm investing large sums of initial capital in an effort to break into a competitive industry would have earned profits.

The Trustee need not prove the amount of the profits lost with precision, but he must come forth with "specific facts," Fed.R.Civ.P. 56(e), tending to show that DMC was likely to earn *some* profits. Courts in New York

and Michigan have permitted recovery for lost profits on the basis of evidence such as testimony from economists and industry experts, or reliable statistical data drawn from comparably situated firms. *See, e.g., Travellers Int'l A.G. v. Trans World Airlines, Inc.,* 41 F.3d 1570, 1580 (2d Cir.1994); *Kenford,* 67 N.Y.2d at 261–62, 502 N.Y.S.2d at 132–33, 493 N.E.2d at 234–36; *Fera,* 242 N.W.2d at 374–75. The Trustee has adduced no evidence of that sort, and has supplemented the bare allegations in his complaint only with equally bare allegations in his Memorandum of Law. The only fact in the record bearing directly on DMC's profitability is DMC's record of losses in each year of its short existence. On this record, a reasonable factfinder could not find that DMC's damages included lost profits ascertainable with the reasonable certainty required under New York and Michigan law. On the contrary, the only inference that seems warranted under the evidence is that DMC's early demise spared the Trustee further losses. Accordingly, AA is entitled to summary judgment to the extent the Trustee seeks to recover lost profits.

■ Sixth, AA contends that the Trustee cannot recover damages based on DMC's indebtedness to trade creditors. AA reasons that DMC could not conceivably have been damaged by further indebtedness because the indebtedness provided a benefit—more capital—to the company.

AA's argument is intuitively appealing, but at least one court has held that ostensibly beneficial additional capital may in some cases prove harmful to a corporation. As explained in *Schacht v. Brown,* 711 F.2d 1343 (7th Cir.), *cert. denied,* 464 U.S. 1002, 104 S.Ct. 508, 509, 78 L.Ed.2d 698 (1983), trade credit may provide an illusory financial cushion that lulls shareholders into postponing the decision to dissolve the corporation. 711 F.2d at 1350. Shareholders may under these circumstances miss an opportunity to "cut their losses" by shutting down operations before management can fritter away whatever valuable assets the corporation still possesses. *Id.* The *Schacht* Court thus reasoned that under Illinois law, "the corporate body [could be] ineluctably damaged by the

deepening of its insolvency...." *Id.* The "deepening insolvency" theory has been approved by at least one court in this jurisdiction. *See In re Investors Funding Corp. of New York Secs. Litig.,* 523 F.Supp. 533, 541 (S.D.N.Y.1980) ("A corporation is not a biological entity for which it can be presumed that any act which extends its existence is beneficial to it").

AA's attacks the "deepening insolvency" theory exclusively on the ground that the theory is not legally recognized; AA's does not specifically challenge the factual predicate for applying the theory here. Neither party has offered specific evidence as to how DMC managed its asset portfolio between 1978 and 1981 or why DMC waited until 1981 to declare bankruptcy. AA complains that the Trustee has been less than forthcoming in his answers to AA's interrogatories on this subject (Def.Mem. at 29), but, as explained above, the Trustee has not violated any order to compel so no sanction pursuant to Fed. R.Civ.P. 37(b)(2) is warranted. Because courts have permitted recovery under the "deepening insolvency" theory, AA is not entitled to summary judgment as to whatever portion of the claim for relief represents damages flowing from indebtedness to trade creditors.

■ Finally, AA argues that DMC is barred from recovering damages on its fraud and malpractice claims because DeLorean's intentional misconduct should be imputed to DMC and the Trustee. *See Miller v. New York Produce Exch.,* 550 F.2d 762, 768 (2d Cir.) ("where a defendant's only sin is its failure to prevent transgressions by the plaintiff, no benefit flows to the public from rewarding the transgressor"), *cert. denied,* 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977); *In re Crazy Eddie Secs. Litig.,* 802 F.Supp. 804, 817 (E.D.N.Y.1992).

■ Generally, under both New York and Michigan law, the knowledge and conduct of corporate officials acting within the scope of their duties are imputed to the corporation. *Center v. Hampton Affiliates, Inc.,* 66 N.Y.2d 782, 784, 497 N.Y.S.2d 898, 899, 488 N.E.2d 828, 829 (1985); *Upjohn Co. v. New Hampshire Ins. Co.,* 438 Mich. 197,

476 N.W.2d 392, 401 (1991) ("when a person representing a corporation is doing a thing which is in connection with and pertinent to that part of the corporation business which he is employed, or authorized or selected to do, then that which is learned or done by that person pursuant thereto is in the knowledge of the corporation") (citation omitted). However, when a corporate agent has "totally abandoned his principal's interests and [acts] entirely for his own or another's purposes," there is no imputation under the "adverse interest" exception to the general rule. *Hampton Affiliates,* 66 N.Y.2d at 784–85, 497 N.Y.S.2d at 900, 488 N.E.2d at 829–30; *Hoekzema v. Van Haften,* 313 Mich. 417, 21 N.W.2d 183, 187 (1946) (refusing to impute knowledge of agent to principal; agent furthered his own interest in prompt completion of sale of livestock from third party to principal by concealing from principal knowledge that livestock were diseased).

Under New York law, the "adverse interest" exception does not apply "when the agent acts both for himself and the principal, though his primary interest is inimical to the principal." *In re Crazy Eddie,* 802 F.Supp. at 817; *Hampton Affiliates,* 66 N.Y.2d at 785, 497 N.Y.S.2d at 900, 488 N.E.2d at 829–30. It does not appear that any Michigan court has specifically considered this question, but there is no reason to believe that a Michigan court would depart from the New York and Restatement rule that the adverse interest exception is not triggered if the agent is acting at least in part to further the principal's interest. Restatement (Second) of Agency § 282 cmt. c (1957); Matthew G. Dore, *Presumed Innocent? Financial Institutions, Professional Malpractice Claims, and Defenses Based on Management Misconduct,* 1995 Colum.Bus.L.Rev. 127, 161 (1995) ("The courts appear to agree that adverse interest should be determined by a corporate agent's motives, rather than the outcome of his activities, and that if the agent acts for the benefit of the corporation at least in part, the adverse interest exception does not apply").

The Trustee has alleged that DeLorean misappropriated about half of the GPD contract proceeds, and that he diverted the other half of the money to Lotus officials as bribes with an eye to the future purchase of Lotus for his own account. (Pl.Mem. at 200) If that is true, it could be said that DeLorean totally abandoned the interest of DMC with the result that his conduct would not be imputed to DMC under either Michigan or New York law. At trial, it will not be easy for the Trustee to prove that no portion of the GPD contract proceeds inured to the benefit of DMC. But because it is not clear at this time that it would be impossible for the Trustee to make such a showing, summary judgment can not be granted on this ground.

If it is determined at trial that imputation is appropriate here notwithstanding the adverse interest exception, that imputation will bar recovery by the Trustee on his fraud claims because access to the truth renders reliance on representations to the contrary unreasonable as a matter of law. *See Simms v. Biondo,* 816 F.Supp. 814, 822 (E.D.N.Y. 1993) (E.D.N.Y.1993); *McIntyre v. Lyon,* 325 Mich. 167, 37 N.W.2d 903, 906 (1949) ("Knowledge of the falsity of representations is inconsistent with reliance thereon"). However, imputation would not necessarily operate as a complete bar to the Trustee's negligence and malpractice claims, because both New York and Michigan are comparative negligence jurisdictions. N.Y.Civ.Prac.L. & R. § 1411 (McKinney 1976); *Hall & Co. v. Steiner & Mondore,* 147 A.D.2d 225, 227–28, 543 N.Y.S.2d 190, 191–92 (3d Dep't 1989); *Rittenhouse v. Erhart,* 424 Mich. 166, 380 N.W.2d 440, 443 (1985).

### III.

AA also has asserted numerous claim-specific challenges to the Second Amended Complaint.

### A. *State Common Law Claims*

The Trustee has asserted six state common law claims, for malpractice, negligence, breach of contract, unjust enrichment, fraud, and aiding and abetting common law fraud and/or breach of a fiduciary duty. Because the Trustee to date has offered no explanation of the basis for the unjust enrichment claim, and because relief under that

theory generally is unavailable where the parties' rights and liabilities are governed by an express contract, *DePinto v. Ashley Scott, Inc.,* —— A.D.2d ——, ——, 635 N.Y.S.2d 215, 216–17 (1st Dep't 1995), *Johnson v. Michigan Mut. Ins. Co.,* 183 Mich.App. 277, 454 N.W.2d 128, 130 (1989), that claim is not viable. AA does not otherwise challenge any of the other state common law claims on their individual merits. Accordingly, summary judgment is granted in favor of AA as to the claim for unjust enrichment, and is denied as to the rest of the state common law claims, except to the extent stated above in Part II of this opinion.

## B. *Securities Fraud under Rule 10b–5*

The Trustee's claim under Rule 10b–5 is based on the sale of DMCL preferred stock in conjunction with the Master Agreement and the sale of the DRLP limited partnership interests. The Trustee has dropped his claim based on the March 1980 modification of the NIDA put. (Pl. Mem. at 146 n. 60)

For the reasons stated in the DED Opinion, 924 F.Supp. at 460–61, the Rule 10b–5 claim is foreclosed with respect to DED's purchase of DMC shares pursuant to the Master Agreement.

To recover damages based on the September 1978 sale of the DRLP limited partnership interests, DMC must be either a purchaser or a seller of those interests. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 749–755, 95 S.Ct. 1917, 1931–35, 44 L.Ed.2d 539 (1975). In *Capri v. Murphy,* 856 F.2d 473 (2d Cir.1988), the Second Circuit held that the general partners of a limited partnership could be deemed the "sellers" of the limited partnership interests under § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2). Section 12(2) is an antifraud provision reaching "[a]ny person who ... offers or sells a security." Rule 10b–5 is a similar provision promulgated under the 1934 Act that imposes liability for fraud "in connection with the purchase or sale of any security." Although the language in the two provisions is not identical, there is no reason to believe that the concept of who is a "seller" for purposes of federal securities fraud liability in the 1934 Act is any different from the same concept for similar purposes under the 1933 Act.

However, even if DMC can be deemed a seller of the DRLP limited partnership interests, DMC still was not defrauded "in connection with" the sale of those interests. In fact, DMC received nearly $18 million as a result of that securities transaction. The Trustee's complaint is not that as the seller, DMC was defrauded into accepting less than fair market value for the DRLP limited partnership interests. The Trustee argues that "the DRLP proceeds which were raised by DMC to use for research and development were embezzled instead." (Pl. Mem. at 153; Compl. ¶ 38) The Trustee relies heavily on *Superintendent of Ins. of State of N.Y. v. Bankers Life & Cas. Co.,* 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). In *Bankers Life,* the successor to an insolvent insurance company sued a different insurance company that had purchased securities from the insolvent firm. The plaintiff claimed that even though the purchasers had paid the fair market value of the securities at the time of the sale, the selling company had been defrauded because the company never received the proceeds of the sale. Through a complex series of transactions, the purchasers managed to pay for the securities "not with their own funds, but with [the insolvent company's] assets." *Id.* at 7, 92 S.Ct. at 166. The Supreme Court permitted recovery under Rule 10b–5 because "the seller was duped into believing that it, the seller, would receive the proceeds." *Id.* at 9, 92 S.Ct. at 167. Thus, the company was "injured as an investor through a deceptive device which deprived it of any compensation for the sale of its valuable block of securities." *Id.* at 10, 92 S.Ct. at 168.

*Bankers Life* is distinguishable. Unlike the seller in *Bankers Life* that never received the proceeds of the sale, DMC here did receive the proceeds of the DRLP offering on September 22, 1978. The Trustee's complaint is that DeLorean later embezzled some of the proceeds in November 1978 and January 1979. This situation bears more resemblance to the facts of *In re Investors Funding Corp. of New York Secs. Litig.,* 523 F.Supp. 533 (S.D.N.Y.1980). There, a bank-

ruptcy trustee sued the bankrupt company's former auditors under Rule 10b–5 to recover funds received in a securities offering that the company's management subsequently misappropriated. The Court explained that "such a claim is essentially a state law claim of corporate mismanagement and breach of fiduciary obligations, and [ ] the connection to a securities transaction is too tenuous to form the basis for a claim under the federal securities laws." *Id.* at 539; *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 62 (2d Cir.1985) (injury suffered by bankrupt corporation allegedly in connection with securities transaction "occurred later, after the securities transactions were completed, when the proceeds of those transactions were allegedly funneled into unwise investments or diverted to the personal use" of the company's controlling stockholders); *Rochelle v. Marine Midland Grace Trust Co. of New York,* 535 F.2d 523, 528–29 (9th Cir. 1976) (bankruptcy trustee cannot sue company's accountants to recover proceeds of securities offering that later were "frittered away").

Because the injury the Trustee complains of was not suffered "in connection with" the only remaining securities transactions on which the Rule 10b–5 claim might be premised, AA is entitled to summary judgment on that claim.

#### C. *Aiding and Abetting Securities Fraud under Rule 10b–5*

 In view of the Supreme Court's recent holding that there is no private civil liability under Section 10(b) and Rule 10b–5 for aiding and abetting securities fraud, summary judgment is granted in favor of AA on that claim. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, ——, 114 S.Ct. 1439, 1455, 128 L.Ed.2d 119 (1994).

#### D. *Violation of 18 U.S.C. § 1962(c) (RICO)*

For the reasons stated in the DED Opinion, 924 F.Supp. at 465–72, summary judgment is granted in favor of AA on the Trustee's RICO claim under 18 U.S.C. § 1962(c).

#### E. *Violation of 18 U.S.C. § 1962(a) (RICO)*

The Trustee informs the court in his Memorandum of Law that he "will not be pursuing his claim for a violation of 18 U.S.C. § 1962(a) at trial." (PL. Mem at 165 n. 168) Accordingly, summary judgment is granted in favor of AA on that claim.

#### F. *Aiding and Abetting RICO Violations*

 Because I have found that there is no private civil cause of action for aiding and abetting a RICO violation, *see* DED Opinion, 924 F.Supp. at 475–78, summary judgment is granted in favor of AA on that claim.

#### G. *Violation of Mich.Comp.Laws § 600.2919a*

 Mich.Comp.Laws § 600.2919a provides:

> A person damaged as a result of another person's buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property when the person buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney's fees. This remedy shall be in addition to any other right or remedy the person may have at law or otherwise.

The Trustee alleges that DeLorean received stolen property belonging to DMC and DMCL (Second Am Compl. ¶ 198), that AA aided DeLorean in concealing his receipt of stolen property (*Id.* ¶ 199), and that AA knew or should have known that the property was stolen. (*Id.* ¶ 200) AA argues for summary judgment on the ground that the money De-Lorean allegedly misappropriated belonged to the DRLP limited partners, not to DMC.

As explained above, the money DeLorean allegedly misappropriated from GPD was supplied by the DRLP limited partners, not by DMC. The Trustee has no standing to assert the rights of the DRLP limited partners against AA here. However, the Michigan statute does not require that the plaintiff be the owner of the property that is stolen,

embezzled, or converted. The statute confers a right to sue on behalf of any "person damaged as a result of another person's ... aiding in the concealment of any stolen, embezzled, or converted property...." DMC might have been damaged indirectly by a theft of funds belonging to the DRLP limited partners to the extent that those funds would have been spent, absent embezzlement, on research benefitting DMC. Because there is an issue of fact as to when AA knew about DeLorean's misuse of the DRLP investors' funds, *see* DED Opinion, 924 F.Supp. at 463, summary judgment is denied as to the Trustee's Michigan statutory claim.

## IV.

As explained above, none of the Trustee's federal claims survive summary judgment. The following claims remain in the action: malpractice, negligence, breach of contract, common law fraud, aiding and abetting common law fraud, and violation of Mich.Comp. Laws § 600.2919a.

The supplemental jurisdiction statute, 28 U.S.C. § 1367, has no direct application here because it was enacted in 1990, almost six years after this action was initiated. *See Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 608 (S.D.Fla.1991) (§ 1367 does not apply retroactively). Under the substantially identical federal common law principles of pendent jurisdiction prevailing before the enactment of § 1367, district courts generally would decline to exercise jurisdiction over pendent state law claims when all federal claims were dismissed before trial. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). However, courts enjoyed, if that is the word, discretion to retain jurisdiction over pendent claims when doing so would promote "judicial economy, convenience, and fairness to litigants." *Id.* at 726, 86 S.Ct. at 1139; *Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir.1988).

There appears to be considerable overlap between this action and the DED Action. Both actions will turn primarily on the quality of AA's audits for the DeLorean entities. In the DED action, DED has raised issues of

fact precluding total summary judgment on its Rule 10b–5 claim and on its state law claims. Because the DED action, barring settlement or voluntary dismissal, will go to trial, judicial economy would be served by trying this action together with the DED action. Accordingly, I will retain jurisdiction over the Trustee's state law claims at this time on the understanding that some significant portion of this action can be tried together with the DED Action. If not, or if the DED Action itself is dismissed, I will revisit the issue.

\* \* \* \* \* \*

For the reasons stated above, summary judgment is granted in favor of AA as to the fourth, seventh, eighth, ninth, tenth, and eleventh claims for relief in the Second Amended Complaint and is denied as to the remaining claims.

SO ORDERED.