In re GLOBAL SERVICE
GROUP LLC, Debtor.

David R. Kittay, Chapter 7 Trustee
of Global Service Group LLC,
Plaintiff,

v.

Atlantic Bank of New York,
et al., Defendants.

Bankruptcy No. 01–15666(SMB).
Adversary No. 04–2775.

United States Bankruptcy Court,
S.D. New York.

Nov. 4, 2004.

Geron & Associates, P.C., Yann Geron, Esq., of Counsel, New York, NY, for Plaintiff.

Sullivan & Worcester LLP, Michael T. Sullivan, Esq., Gayle Ehrlich, Esq., Matthew B. Giger, Esq., of Counsel, New York, NY, for Defendant Atlantic Bank of New York.

Gazes & Associates LLP, Ian J. Gazes, Esq., Eric P. Wainer, Esq., of Counsel, New York, NY, for Alan Goldman, Gerald Goldman, Robert Cohen, A & G Goldman Partnership and Bargold Storage Systems LLC.

## MEMORANDUM DECISION DISMISSING CLAIMS AGAINST ATLANTIC BANK AND INSIDER DEFENDANTS

STUART M. BERNSTEIN, Chief Judge.

On March 10, 2004, David S. Kittay, Esq., the chapter 7 trustee for the estate of Global Service Group, LLC ("Global" or the "debtor"), commenced this adversary proceeding against, *inter alia*, Atlantic Bank and members and insiders of Global, including Alan Goldman ("Alan"), Gerald Goldman ("Gerald," and together with Alan, the "Goldmans"), and Robert Cohen. Alan, Gerald and Cohen are sometimes collectively referred to as the ("Insiders Defendants"). The Complaint alleges two general categories of wrongful conduct: fraudulent transfers and the artificial prolongation of Global's corporate life, resulting in its "deepening insolvency."

Atlantic Bank moved to dismiss the five claims asserted against it and the Insider Defendants moved to dismiss many of the claims directed towards them. The Court disposed of most of the latter motion from the bench, and reserved decision on three claims. For the reasons that follow, Atlantic Bank's motion is granted. The three unresolved claims against the Insider Defendants' are also dismissed but with leave to replead.

## BACKGROUND

The following facts alleged in the Complaint are assumed to be true for purposes of these motions.[1]

### A. Introduction

Global is a limited liability company organized under the laws of New York, and prior to the conversion of this case to chapter 7, was engaged in the business of marble, metal and wood refinishing. (Complaint, ¶¶ 8, 19.) The senior management and principal members of Global included the Goldmans and either Walter or Lauren Lichtman, who are also defendants.[2] (Complaint, ¶ 20.) Cohen served as the debtor's Chief Financial Officer, (Complaint, ¶ 21), and he and the Goldmans were authorized to sign checks on Global's behalf. (Complaint, ¶¶ 20, 21.)

The Complaint also names four defendant entities as fraudulent transferees. Two are owned and controlled by either or both of the Goldmans. These are A & G Goldman Partnership ("A & G"), (Complaint, ¶¶ 14, 121), and Bargold Storage System LLC ("Bargold"). (Complaint, ¶¶ 15, 161.) The other two are Andrew Bryant Associates ("Bryant"), a corporation, (Complaint, ¶ 16), and 95 Bruckner LLC ("Bruckner"), a limited liability company, (Complaint, ¶ 17), and "an insider of the Debtor as that term is defined under the Bankruptcy Code." (Complaint, ¶ 235.)

---

1. A court may dismiss a complaint under FED. R.CIV.P. 12(b)(6), made applicable to this adversary proceeding by FED. R. BANKR P. 7012, only if it appears beyond doubt that the plaintiff would not be entitled to any type of relief, even if he proved the factual allegations in his complaint. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Harsco Corp. v. Segui*, 91 F.3d 337, 341 (2d Cir. 1996); *Cohen v. Koenig*, 25 F.3d 1168, 1171–72 (2d Cir.1994); *Sykes v. James*, 13 F.3d 515, 519 (2d Cir.1993), *cert. denied*, 512 U.S. 1240, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994). The court must assume the truth of factual allega-

tions in the complaint, *Harsco Corp. v. Segui*, 91 F.3d at 341, and draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Luedke v. Delta Air Lines, Inc.* 159 B.R. 385, 389 (S.D.N.Y.1993); *Raine v. Lorimar Prods., Inc.*, 71 B.R. 450, 453 (S.D.N.Y.1987).

2. Paragraph 20 refers to "Lichtman," but does not identify which "Lichtman." Lauren is a "relative" of Walter. (Complaint, ¶ 248.)

Finally, the Complaint names Atlantic Bank. Atlantic Bank is the senior secured creditor of Global, with an alleged lien on all of Global's assets. (Complaint, ¶ 22.)

## B. The Trustee's Theories

### 1. Fraudulent Transfers

As noted, the Complaint alleges two general theories of wrongdoing. First, the Goldmans and Cohen authorized certain alleged fraudulent conveyances without requiring the transferees to pay fair and adequate consideration to the Debtor. (Complaint, ¶ 102.) The Complaint identifies the following fraudulent transfers:

#### a. Goldmans/A & G Transfers

On May 16, 2000, Global transferred $175,000 (or a total of $350,000.00) to each of the Goldmans within days after it obtained its initial loan from Atlantic Bank. (Complaint, ¶¶ 61, 82.) On December 21 and December 27, 2000, Global transferred $31,800.00 and $48,931.67, respectively, to A & G. (Complaint, ¶ 120.)

#### b. Bargold Transfers

During the two year period preceding the petition date, Global transferred not less than $65,000.00 to Bargold. (Complaint, ¶ 172.) Several of those transfers, aggregating $45,000.00, were made within one year of the petition date. (Complaint, ¶ 160.) In addition, Global transferred not less than $76,424.43 to Bargold after the petition date. (Complaint, ¶ 199.)

#### c. Bryant Transfers

Bryant shares the same address as Andrew Kalish, one of the debtor's former employees. (Complaint, ¶ 205.) During the two years preceding the filing of its chapter 11 petition, Global transferred at least $116,602.86 to Bryant. (Complaint, ¶ 216.) Of that amount, $36,000.00 was transferred within one year of the petition date. (Complaint, ¶ 204.)

#### d. Bruckner Transfers

Within one year of the petition date, Global transferred not less than $51,045.84 to Bruckner (Complaint, ¶ 234.) Following the commencement of the case, the debtor transferred not less than $22,015.28 to Bruckner. (Complaint, ¶ 241.)

#### e. Lauren Lichtman Transfers.

During the two years preceding the petition date, Global transferred at least $27,022.78 to Lauren Lichtman. (Complaint, ¶ 259.) Not less than $14,022.78 of that amount was transferred during the one year period before the petition date. (Complaint ¶ 246.)

### 2. "Deepening Insolvency"

The trustee's second theory maintains that Global was allowed to operate while insolvent, and incurred additional debt that it could not repay. The following claims are based on this theory:

#### a. Atlantic Bank

Since its formation in January 2000, Global was insolvent or in the vicinity of insolvency and undercapitalized. (Complaint, ¶ 31.) Atlantic Bank knew or should have known that the debtor would be unable to repay its loans due to its financial condition, but loaned the debtor money anyway, (Complaint, ¶ 32, 33), apparently based upon its relationship with the Goldmans and the strength of their personal assets. (Complaint, ¶ 33.) The Goldmans pledged their individual assets to Atlantic Bank in order for Global to obtain the necessary loans for working capital and to continue operating. (Complaint, ¶ 51.)

Other creditors extended credit to Global based on Atlantic Bank's willingness to

extend credit. (Complaint, ¶ 34.) The Atlantic Bank loans allowed Global to prolong its corporate existence and incur increased debt which would have been avoided without the Atlantic Bank loans. (Complaint, ¶ 35.)

### b. The Insider Defendants [3]

The Goldmans and Cohen, either individually or acting in concert with each other, allowed Global to do business and incur indebtedness while it was insolvent and undercapitalized. (Complaint, ¶ 101.) The Insider Defendants knew that the debtor would be unable to repay these debts based on its financial condition. (Complaint, ¶ 109.) By prolonging the debtor's corporate life and incurring more debt, the Insider Defendants deepened Global's insolvency, and reduced any potential recovery for the creditors of the debtor's bankruptcy estate. (Complaint, ¶ 105.) The expansion of Global's debt was the proximate cause of the damage to Global and its creditors. (Complaint, ¶ 106.)

### C. The Bankruptcy Filing

The debtor filed its chapter 11 petition on November 7, 2001. (Complaint, ¶ 1.) The case was converted to chapter 7 by order dated March 11, 2003. (Complaint, ¶ 1.) David Kittay, Esq. was appointed interim chapter 7 trustee, and subsequently qualified as permanent trustee. (Complaint, ¶ 1.) The trustee filed his forty–seven count Complaint, commencing this adversary proceeding, on March 10, 2004. Atlantic Bank moved to dismiss the First through Fourth and Seventeenth Causes of Action, all of the claims in which it was

named. I reserved decision, and these causes of action are discussed below.

The Insider Defendants, A & G and Bargold, represented by the same law firm, moved to dismiss many of the Causes of Action.[4] Following the oral argument of the motion on July 27, 2004, the Court denied the motion to the extent that it was directed at the fraudulent conveyance claims, dismissed the contribution claim, and the trustee withdrew the equitable subordination claim. The Court reserved decision on the claims that implicated the "deepening insolvency" theory, (the Thirteenth through Fifteenth Causes of Action), and these are discussed below.

### DISCUSSION

### A. Atlantic Bank's Motion to Dismiss

### 1. The First Cause of Action/"Deepening Insolvency"

The First Cause of Action alleges that Atlantic Bank engaged in conduct associated with the phrase "deepening insolvency." "Deepening insolvency" refers to the "fraudulent prolongation of a corporation's life beyond insolvency," resulting in damage to the corporation caused by increased debt. *Schacht v. Brown,* 711 F.2d 1343, 1350 (7th Cir.), *cert denied,* 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983). Its origin has been traced to *Bloor v. Dansker (In re Investors Funding Corp. of New York Sec. Litig.),* 523 F.Supp. 533 (S.D.N.Y.1980). *See* Mette H. Kurth, *The Search for Accountability: The Emergence of "Deepening Insolvency" as an Independent Cause of Action,* 9 ANDREW'S BANKR.LITIG. REP. 6 (Aug. 27, 2004).

---

3. The "deepening insolvency" claims are also made against Walter Lichtman, but he did not move to dismiss.

4. The Causes of Action deemed to be encompassed in the motion are those identified in

the Notice of Motion. In some instances, the movants mentioned other Causes of Action in their submissions, but these have not been considered.

There, the complaint alleged that the debtor's insiders (the Danskers) embarked on a scheme to loot the corporate debtor. *In re Investors Funding Corp.,* 523 F.Supp. at 536. Relying on a false picture of the debtor's financial well-being, they induced creditors and shareholders to invest more funds in the company. Thereafter, they misappropriated a portion of the funds that were raised. *See id.* at 536.

Peat, Marwick, Mitchell & Co. ("PMM") had served as the debtor's outside auditor. The debtor's chapter X trustee sued PMM, charging that the Danskers used the false financial statements that PMM had certified to further their scheme. *Id.* at 537. PMM moved for partial judgment on the pleadings or for partial summary judgment, and argued, *inter alia,* that the knowledge and wrongful conduct of the insiders should be imputed to the debtor's insiders to defeat recovery. *Id.* at 533.

PMM's argument invoked the "adverse interest" exception to the general rule that the agent's knowledge will be imputed to his principal. According to the District Court, the "adverse interest" exception applied if the agent acted adversely to the interest of his principal, but did not apply "where the agent is also acting for the principal's benefit, even though the agent's primary interest is inimical to that of the principal." *Id.* at 541. PMM urged that although the Dansker's were motivated by personal interests, the complaint also alleged that the debtor benefitted from the infusion of funds.

In words that begat the theory of "deepening insolvency," the District Court rejected the notion that acts that prolong a corporation's existence automatically confer a benefit on the corporation:

[E]ven to the extent one focuses upon the artificial financial picture of IFC [the debtor] created by the Danskers which prolonged IFC's existence several years beyond its actual insolvency, PMM's position is not persuasive. *A corporation is not a biological entity for which it can be presumed that any act which extends its existence is beneficial to it.* The complaint plainly alleges that, as a result of the Danskers' practices, IFC's financial situation was caused to deteriorate even further after 1971. Accepting the allegations of the complaint as true, it is manifest that the prolonged artificial solvency of IFC benefited only the Danskers and their confederates, not IFC.

*Id.* (emphasis added).

What began as a justification for recognizing the "adverse interest" exception soon morphed into a theory of recovery. Since *Investors Funding,* several courts have accepted the theory that an insolvent corporation suffers a distinct and compensable injury when it continues to operate and incur more debt.[5] Some have treated "deepening insolvency" as an independent cause of action. *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.,* 267 F.3d 340, 349–52 (3d Cir.2001)(construing Pennsylvania law); *Official Comm. of Unsecured Creditors v. Credit Suisse First Boston (In re Exide Techs., Inc.),* 299 B.R. 732, 750–52 (Bankr.D.Del.2003)(construing Delaware law). Other courts have viewed it as a theory of damages, often raised in response to the defense that increased debt injured the creditors, but did not harm (and actually helped) the corporation. *Schacht,* 711 F.2d at 1350; *Hannover Corp. of America v. Beckner,* 211 B.R. 849, 854 (M.D.La.1997); *Allard v. Arthur*

---

**5.** Technically, the same theory should apply to a solvent company that works itself into insolvency.

*Andersen & Co. (USA)*, 924 F.Supp. 488, 494 (S.D.N.Y.1996); *Drabkin v. L & L Constr. Assocs., Inc. (In re Latin Inv. Corp.)*, 168 B.R. 1, 6 (Bankr.D.C.1993). Finally, some courts have rejected the theory outright, *Coroles v. Sabey,* 79 P.3d 974, 983 (Utah Ct.App.2003)(rejecting "deepening insolvency" as a theory of damages because shareholders rather than the corporation suffer harm), or raised serious questions about its viability. *See Florida Dep't of Ins. v. Chase Bank of Texas Nat'l Ass'n,* 274 F.3d 924, 935–36 (5th Cir.2001)(questioning whether Texas recognizes the cause of action, but even if it did, concluding that the defendant was entitled to summary judgment because the plaintiff failed to quantify the additional debt or provide evidence of damages that might be compensable under the "deepening insolvency" theory); *Askanase v. Fatjo,* No. Civ. A. H–91–3140, 1996 WL 33373364, at *28 (S.D.Tex. Apr.1, 1996)(rejecting trustee's "deepening insolvency" argument because the insolvent debtor was not damaged by false financial statements since the shareholders had already lost all of their equity and the complaint did not allege that any creditor was injured); *Feltman v. Prudential Bache Sec.,* 122 B.R. 466, 473–74 (S.D.Fla.1990)(rejecting argument that insolvent corporation was harmed by artificial extension of its life where complaint alleged that corporation was a sham, without a corporate identity and served as a conduit for stolen money).

Decisions since *Investors Funding* suggest that the New York courts regard "deepening insolvency" as a theory of damages that may result from the commission of a separate tort. *See, e.g., Allard,* 924 F.Supp. at 494 (relying on "deepening insolvency" to reject the contention that a bankruptcy trustee could not recover damages in an action based on RICO, federal securities law violations and related state and common law claims); *Gouiran Holdings, Inc. v. DeSantis, Prinzi, Springer, Keifer & Shall (In re Gouiran Holdings, Inc.),* 165 B.R. 104, 107 (E.D.N.Y.1994)(reversing grant of motion to dismiss claim for negligent preparation of financial statements which may have resulted in debtor's "incurring unmanageable debt and filing for bankruptcy"); *Corcoran v. Frank B. Hall & Co.,* 149 A.D.2d 165, 545 N.Y.S.2d 278, 283–85 (N.Y.App.Div.1989)(liquidator of insurance company stated claims for common law fraud and insurance law violations arising from the concealment of insurance company's financial condition which caused insurance company to assume additional risks and increase its final financial exposure). No reported New York case, however, has ruled that "deepening insolvency" is an independent tort.

The distinction between "deepening insolvency" as a tort or damage theory may be one unnecessary to make. Prolonging an insolvent corporation's life, without more, will not result in liability under either approach. Instead, one seeking to recover for "deepening insolvency" must show that the defendant prolonged the company's life in breach of a separate duty, or committed an actionable tort that contributed to the continued operation of a corporation and its increased debt. *E.g., R.F. Lafferty & Co.,* 267 F.3d at 345, 349 (defendants used fraudulent financial statements to raise capital in the debtor's name, thereby deepening debtor's insolvency and causing bankruptcy); *Schacht,* 711 F.2d at 1350 (parent company and directors continued to operate insolvent company by fraudulently concealing the company's insolvency); *Allard,* 924 F.Supp. at 494 (fraud by debtor's accountant led to continued operations and increased debt); *In re Gouiran Holdings, Inc.,* 165 B.R. at 107(negligent preparation of financial statements may have caused

debtor to incur unmanageable debt and file for bankruptcy); *In re Exide Techs., Inc.,* 299 B.R. at 750–52 (recognizing "deepening insolvency" cause of action against lender who had obtained control of the debtor and used its control to prolong the debtor's life for two years and to force it to enter into transactions or delay a bankruptcy filing in order to favor the lender at the expense of the debtor); *Tabas v. Greenleaf Ventures, Inc. (In re Flagship Healthcare, Inc.),* 269 B.R. 721, 728–29 (Bankr.S.D.Fla.2001)(negligently prepared valuation report induced corporation to continue to make corporate acquisitions and borrow additional funds, and resulted in financial deterioration); *In re Latin Inv. Corp.,* 168 B.R. at 6 (concluding that the trustee had standing to sue for injuries to the debtor based on the allegations that the defendants perpetuated the business past the point of insolvency in order to loot it).

■ Considered against this backdrop, the First Cause of Action falls short. The Complaint alleges, in substance, that Atlantic Bank should be liable for Global's "deepening insolvency" because the bank made a loan that it knew or should have known Global could never repay. This may be bad banking, but it isn't a tort. A third party is not prohibited from extending credit to an insolvent entity; if it was, most companies in financial distress would be forced to liquidate. And while the Complaint alleges that Atlantic Bank made the loan on the strength of its relationship with the Goldmans and their personal assets, this is neither surprising nor improper. Banks prefer to lend to those they know, and have the right to insist on guaranties and pledges of personal assets from the corporate principals. Notably, the

Complaint does *not* allege or imply that Atlantic Bank extended the loans to enable the Goldmans to siphon off the funds or commit some other wrong.

This leads to the second problem with the First Cause of Action, and for that matter, with much of the Complaint. The unspoken premise of the trustee's "deepening insolvency" theory is that the managers of an insolvent limited liability company are under an absolute duty to liquidate the company, and anyone who knowingly extends credit to the insolvent company breaches an independent duty in the nature of aiding and abetting the managers' wrongdoing. The assumption is a faulty one.

■ Under New York law, the management of a corporation is generally vested in the board of directors, N.Y. Bus. Corp. L. § 701 (McKinney 2003)("BCL"), and the board appoints or elects the officers.[6] *Id.,* § 715(a). The officers and directors must perform their duties "in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances." *Id.,* § 715(h)(duties of officers), § 717(a)(duties of directors). Directors and officers owe their fiduciary duties to both the corporation and the shareholders. *See Gully v. National Credit Union Administration Board,* 341 F.3d 155, 165 (2d Cir.2003) (describing the fiduciary duty owed by directors and officers under the N.Y. B.C.L.); *O'Connor & Assocs. v. Dean Witter Reynolds, Inc.,* 529 F.Supp. 1179, 1184 (S.D.N.Y.1981) (noting fiduciary duties of directors and officers are based on the premise that "shareholders are owners of the corporation and they expect to share in its profits").

---

**6.** These general rules can be modified by the certificate of incorporation or a shareholders' agreement.

■ Once insolvency ensues, the fiduciary duties of corporate officers and directors also extend to creditors. *New York Credit Men's Adjustment Bureau v. Weiss*, 305 N.Y. 1, 110 N.E.2d 397, 398 (1953); *see Clarkson Co. v. Shaheen*, 660 F.2d 506, 512 (2d Cir.1981)(discussing fiduciary duties of directors under New York law), *cert. denied*, 455 U.S. 990, 102 S.Ct. 1614, 71 L.Ed.2d 850 (1982). As a result, the officers and directors owe duties to multiple constituencies whose interests may diverge. At that point, they have "an obligation to the community of interest that sustained the corporation, to exercise judgment in an informed, good faith effort to maximize the corporation's long–term wealth creating capacity." *Credit Lyonnais Bank Nederland, N.V. v. Pathe Communications Corp.*, Civ. A. No. 12150, 1991 WL 277613, at *34 (Del.Ch. Dec.30, 1991)(discussing Delaware law); *accord Roselink Investors, L.L.C. v. Shenkman*, No. 01 Civ. 7176(MBM), 2004 WL 875262, at *2–3 (S.D.N.Y. May 19, 2004)(same).[7]

■ The fiduciaries of an insolvent business might well conclude that the company should continue to operate in order to maximize its "long-term wealth creating capacity," or more generally, its enterprise value. In fact, chapter 11 is based on the accepted notion that a business is worth more to everyone alive than dead. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) ("The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources."); H.R.Rep. No. 95–595, at 220 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6179 ("The premise of a business reorganization is that assets that are used for production in the industry for which they are designed are more valuable than those same assets sold for scrap.... It is more economically efficient to reorganize than to liquidate, because it preserves jobs and assets.").

■ Thus, in contrast to the laws of some foreign jurisdictions, including the United Kingdom,[8] there is no absolute duty under American law to shut down and liquidate an insolvent corporation. The fiduciaries may, consistent with the business judgment rule, continue to operate the corporation's business. *Official Comm. of Unsecured Creditors of RSL COM PRIMECALL, Inc. v. Beckoff (In re RSL COM PRIMECALL, Inc.)*, Adv. Proc. No. 03–2176, 2003 WL 22989669, at *8 (Bankr.S.D.N.Y. Dec.11, 2003)("There is no authority that supports [the] position that there is a blanket duty to liquidate upon insolvency, untempered by the business judgment rule."); *Steinberg v. Kendig (In re Ben Franklin Retail Stores, Inc.)*, 225 B.R. 646, 655 (Bankr.N.D.Ill.1998)(no duty "to liquidate and pay creditors when the corporation is near insolvency, provid-

7. The directors of a New York corporation need not wait until insolvency to consider this community of interests. Under BCL § 717(b), their decision to act may take account of the long-term and short-term interests of the shareholders and the corporation, and the long-term and short-term effect of their actions on (1) the corporation's prospects for potential growth, development, productivity and profitability, (2) the corporation's current employees, the beneficiaries of any retirement or similar plans, and its customers and creditors, and (3) "the ability of the corporation to provide, as a going concern, goods, services, employment opportunities and employment benefits and otherwise to contribute to the communities in which it does business."

8. Under the law of the United Kingdom, directors who continue to operate a business and incur debt when they know that the company is headed for liquidation face liability for wrongful trading. *See In re Ionica, PLC*, 241 B.R. 829, 839 (Bankr.S.D.N.Y.1999).

ed that in the directors' informed, good faith judgment there is an alternative"), *aff'd in part & rev'd in other part,* No. 97 C 7934, 2000 WL 28266 (N.D.Ill.2000). As a result, a manager's negligent but good faith decision to operate an insolvent business will not subject him to liability for "deepening insolvency."

■ To overcome the business judgment rule, a complaint must contain specific allegations that the fiduciary acted in bad faith or with fraudulent intent. *See Lippe v. Bairnco Corp.,* 230 B.R. 906, 916–17 (S.D.N.Y.1999). Although subsequent allegations in the Complaint, discussed below, accuse the Goldmans of self-dealing, the Complaint does not allege that the Insider Defendants prolonged Global's life to misappropriate the transfers they received. Rather, the First Cause of Action wrongly assumes that prolonging the life of an insolvent corporation that continues to incur debt, without more, states a claim for relief.

The First Cause of Action also fails to allege proximate cause. The Complaint implies that "but for" Atlantic Bank's loans, the debtor would have liquidated before its insolvency became deeper. In *Investors Funding Corp.,* the trustee made a similar argument that "but for" the false financial statements prepared by the defendant accountants, the debtor would not have been able to sell securities, and the insiders would not have been able to steal the sale proceeds. 523 F.Supp. at 539–40.

Applying traditional tort concepts, the District Court concluded that the trustee had failed to plead proximate cause, *i.e.,* that " 'the damage was either a direct result or a reasonably foreseeable result of the misleading statement.' " *Id.* at 539

(quoting *Globus v. Law Research Serv., Inc.,* 418 F.2d 1276, 1291 (2d Cir.1969), *cert. denied,* 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970)). It was arguably foreseeable that the false financial statements would allow the debtor to sell securities at greater than their true value. It was not foreseeable, however, that the financial statements would allow the insiders to embezzle the proceeds. *Id.* at 540.

Here, the gravamen of the claims against the Insider Defendants was that they caused Global to pay the Goldmans and their affiliates fraudulent transfers, and the Complaint implies that the Goldmans used at least some of the Atlantic Bank proceeds in furtherance of their scheme.[9] While it was arguably foreseeable that the Atlantic Bank loans would permit the debtor to continue to operate, the Complaint does not allege facts suggesting that Atlantic Bank could have foreseen that the Goldmans would misappropriate the loan proceeds, or operate the insolvent debtor for an improper purpose.

In short, the First Cause of Action does not state a claim upon which relief can be granted, and it is dismissed.

### 2. Second Cause of Action/Aiding and Abetting

The trustee's Second Cause of Action alleges an aiding and abetting claim that mirrors the First Cause of Action. The First Cause of Action alleges that Atlantic Bank's actions "contributed" to Global's "deepening insolvency," "resulted" in increased debt, and "allowed" Global to prolong its existence and incur more debt that could have been avoided. (Complaint, ¶ 35.) The Second Cause of Action alleges that Atlantic Bank's actions "aided and abetted" Global's continued operations, "al-

---

9. These allegations were not incorporated in the first four causes of action asserted against Atlantic Bank.

lowed" Global to incur more debt, and as a "direct result," Global incurred more debt. (Complaint, ¶¶ 38–39.) The Second Cause of Action merits the same fate as the First Cause of Action without further consideration.

■ Even when viewed independently, the Second Cause of Action is legally insufficient. A claim under New York law for aiding and abetting a tortious act must satisfy three elements: "(1) that the principal/third party violated the law or engaged in tortious conduct; (2) that the defendant knew or should have known that the violation or conduct was occurring; and (3) that defendant's conduct gave substantial assistance or encouragement to the principal to engage in the violation or tortious conduct." *Medeiros v. John Alden Life Ins. Co.*, No. 89 Civ. 1278, 1990 WL 115606, at *6 (S.D.N.Y. Aug.10, 1990); *accord Beneficial Commercial Corp. v. Murray Glick Datsun, Inc.*, 601 F.Supp. 770, 772 (S.D.N.Y.1985); *see generally* RESTATEMENT (SECOND) OF TORTS § 876 (1977).

■ The Second Cause of Action does not identify any underlying tortious conduct. It implies, wrongly, that the mere continuation of Global's operations violated a legal duty. Without a primary violation, there is no wrongdoing to aid and abet. Accordingly, the Second Cause of Action is dismissed for failure to state a claim.[10]

### 3. Third Cause of Action/Equitable Subordination

■ The Third Cause of Action alleges that Atlantic Bank's claims should be equitably subordinated under 11 U.S.C. § 510(c).[11] The remedy of equitable subordination is available where (1) the claimant engaged in inequitable conduct, (2) the misconduct caused injury to the creditors or conferred an unfair advantage on the claimant, and (3) equitable subordination is consistent with bankruptcy law. *In re Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir.1977). Equitable subordination is generally limited to cases involving fraud, illegality or breach of fiduciary duty, undercapitalization or control or use of the debtor as an alter ego for the benefit of the claimant. *ABF Capital Mgt. v. Kidder Peabody & Co., Inc. (In re Granite Partners, L.P.)*, 210 B.R. 508, 514 (Bankr. S.D.N.Y.1997). The party seeking to equitably subordinate a non-insider's claim must show that (1) "the creditor has dominated or controlled the debtor" or (2) "has committed some breach of an existing, legally recognized duty arising under the contract, tort or other area of law." *In re 80 Nassau Assocs.*, 169 B.R. 832, 840 (Bankr.S.D.N.Y.1994). In the absence of domination or control by the creditor or breach of an existing legally recognized duty, an allegation that a lender knew or should have known that the loan would render the debtor insolvent is insufficient to equitably subordinate the lender's claim. *In re Dry Wall Supply, Inc.*, 111 B.R. 933, 938 (D.Colo.1990).

As stated, the Complaint does not charge Atlantic Bank with any wrongful or

---

**10.** Given this conclusion, it is unnecessary to consider whether the trustee lacks standing to assert the aiding and abetting claim under the holding of *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir.1991) and its progeny.

**11.** Section 510(c) states:

Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or (2) order that any lien securing such a subordinated claim be transferred to the estate.

inequitable conduct, or allege that it acquired control of the debtor, and thereby became an insider. *See In re Exide Techs., Inc.*, 299 B.R. at 743 (discussing lender's control over the debtor as the hallmark of "insider" status). Accordingly, the Third Cause of Action fails to allege a legally sufficient claim for equitable subordination.

### 4. Fourth Cause of Action/Marshaling

The Fourth Cause of Action relies on the doctrine of marshaling to force Atlantic Bank to satisfy its lien from the Goldmans' assets. (Complaint, ¶ 46.) Marshaling is an equitable principle designed to protect the rights of a junior creditor by compelling a senior creditor to attempt to collect its claim first from another source unavailable to the junior creditor. *See Meyer v. United States,* 375 U.S. 233, 237, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963). "The doctrine of marshaling applies where there is a common debtor of senior and junior creditors and the senior creditor alone has the right to resort to both the common fund and a separate fund." *Fundex Capital Corp. v. Balaber-Strauss (In re Tampa Chain Co.),* 53 B.R. 772, 777 (Bankr.S.D.N.Y.1985); *accord In re Vermont Toy Works, Inc.,* 135 B.R. 762, 767 (D.Vt.1991); *In re Arlco, Inc.,* 239 B.R. 261, 274 (Bankr.S.D.N.Y.1999); *Official Comm. of Unsecured Creditors v. Hudson United Bank (In re America's Hobby Ctr., Inc.),* 223 B.R. 275, 287 (Bankr.S.D.N.Y.1998). The trustee has standing to invoke marshaling because he has the status of a hypothetical lien credi-

tor,[12] *In re Tampa Chain Co.*, 53 B.R. at 777–78, and the Complaint alleges that the trustee's hypothetical lien in the estate's assets is junior to Atlantic Bank's lien. (*See* Complaint, ¶¶ 49–50.)

The Complaint fails, however, to allege that Atlantic Bank had the right to resort to a separate fund owned by the estate. As a rule, the same debtor must own the common and separate fund. *In re Tampa Chain Co.*, 53 B.R. at 778. Although the trustee has an interest in "property of the estate" which is subject to both liens, the Complaint does not allege that he has an interest in the Goldmans' assets, the separate fund. Some courts treat a controlling shareholder and his corporation as a common debtor when the controlling shareholder provided the primary collateral for an operating loan to the company, but most courts—including those in this Circuit—require the proponent of marshaling to plead and prove that the two debtors (*i.e.* the shareholder and the corporation) are *alter egos. In re Tampa Chain Co.*, 53 B.R. at 778; *see In re Vermont Toy Works, Inc.*, 135 B.R. at 769–70; *In re America's Hobby Ctr., Inc.*, 223 B.R. at 288.

The trustee failed to plead a basis to pierce the corporate veil of Global, and treat Global and the Goldmans as *alter egos.* Notwithstanding the liberal pleading standards under FED.R.CIV.P. 8(e), the plaintiff must plead facts sufficient to show a basis to pierce the corporate veil, *See, e.g., Kaplan v. Aspen Knolls Corp.,* 290 F.Supp.2d 335, 340 (E.D.N.Y.2003), and bald and conclusory allegations will not be

---

**12.** Section 544(a)(2) of the Bankruptcy Code grants the trustee the rights and powers, as of the commencement of the case, of "a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is re-

turned unsatisfied at such time, whether or not such a creditor exists." Under N.Y. C.P.L.R. 5202(a) (McKinney 1997), an unsatisfied execution creditor acquires rights in the judgment-debtor's personal property that are superior to all but senior secured creditors and *bona fide* purchasers for value.

considered. *Abeles v. Citytrust,* No. 91 Civ. 0134(LBS), 1991 WL 156364, at *3 (S.D.N.Y. Aug.7, 1991).

Paragraph 51 suggests the factual basis for treating the Goldmans and the debtor as "common debtors." It states that they are members of the debtor and pledged their individual assets to Atlantic Bank to enable the debtor to obtain the operating loan. It concludes that "[t]herefore, A. Goldman, G. Goldman and the Debtor constitute the same debtor for purposes of applying the doctrine of marshaling." These averments appear to be keyed to the minority view that the controlling shareholder and the corporation may be treated as a common shareholder when the former's assets provide the primary collateral that secures the loan to the latter. They do not, however, state a basis for piercing the corporate veil. Furthermore, the Court is not required to credit the conclusory allegation that the Goldmans and the debtor are the same debtor for purposes of the marshaling doctrine, and accordingly, the claim for marshaling asserted against Atlantic Bank in the Fourth Cause of Action is dismissed for failure to state a claim on which relief can be granted.

### 5. Seventeenth Cause of Action/Contribution

The Seventeenth Cause of Action asserts a claim for contribution against Atlantic Bank (as well as the Goldmans, the Lichtmans and Cohen) because the defendants "each contributed to the deepening of the Debtor's insolvency and the expansion of the Debtor's liabilities

when they knew that the Debtor would be unable to pay such liabilities." (Complaint, ¶ 116.) Contribution may be available among joint tortfeasors who are liable for the same injuries to a third party. *See* N.Y. C.P.L.R. 1401 (McKinney 1997); *In re Agent Orange Prod. Liability Litig.,* 818 F.2d 204, 207 (2d Cir.1987). The injured third party, on the other hand, can recover a judgment against each tortfeasor for his entire loss. *See Sommer v. Federal Signal Corp.,* 79 N.Y.2d 540, 583 N.Y.S.2d 957, 593 N.E.2d 1365, 1372 (1992) ("The need for contribution arises from the rule of law that tortfeasors generally are jointly and severally liable for a judgment, meaning that each is responsible for the full amount regardless of culpability.") *But see* N.Y. C.P.L.R. 1601 (McKinney 1997) (limiting liability for tortfeasors with less than fifty percent culpability in personal injury actions for non-economic damages).

The Complaint alleges that the estate is a victim of the defendants' actions, and not that Global and the other defendants are or may be liable jointly for the same injuries suffered by a third party.[13] Accordingly, the Seventeenth Cause of Action fails to state for contribution against Atlantic Bank.[14]

### B. Insider Defendants' Motion to Dismiss

Three claims against the Insider Defendants were not resolved at the hearing on their Motion to Dismiss—the Thirteenth, Fourteen and Fifteenth Causes of Action. The Thirteenth Cause of Action alleges that the defendants breached their

---

**13.** At the argument on the Insider Defendants' motion to dismiss, the trustee clarified his contribution theory. If the estate is liable to the creditors, the contribution defendants are also liable for the same injuries, and the estate would therefore be entitled to contribu-

tion. The Complaint does not include these allegations.

**14.** The contribution claim was dismissed as against the Insider Defendants following oral argument of their motion for the same reasons.

fiduciary duties in two ways. First, they "authoriz[ed] certain fraudulent conveyances without requiring the recipients of such conveyances to provide fair and adequate consideration to the Debtor." (Complaint, ¶ 102.) Allegations that an insolvent corporation made a fraudulent transfer state a claim for breach of fiduciary duty, *Official Comm. of Asbestos Claimants of G–I Holding, Inc. v. Heyman,* 277 B.R. 20, 37 (S.D.N.Y.2002); *Kittay v. Flutie New York Corp. (In re Flutie New York Corp.),* 310 B.R. 31, 57 (Bankr. S.D.N.Y.2004), and the Insider Defendants did not challenge the legal sufficiency of this part of the claim.

■ Second, they allowed "the Debtor to do business and incur indebtedness while the Debtor was insolvent and undercapitalized." (Complaint, ¶ 101.) The Insider Defendants were not, however, under an absolute duty to liquidate Global because it was undercapitalized or insolvent, and the trustee now concedes the point. (*See Memorandum of Law in Support of Trustee's Objection to Motion of [Insider Defendants], A & G Goldman Partnership, and Bargold Storage System LLC to Dismiss the Complaint,* dated July 15, 2004, at 20)(ECF Doc. # 24.) His submissions on this motion nonetheless argue that "it appears that the Goldmans continued to operate the Debtor as a means of siphoning the Debtor's funds for their individual benefit." (*Id.*)

If the Complaint included this allegation, these claims might be legally sufficient. The prolongation of Global's operations would smack of self-dealing, constitute a breach of fiduciary duty, and open up recovery under the theory of "deepening insolvency." *See In re Latin Inv.,* 168 B.R. at 6. But the Complaint does not include this allegation. Rather, as drafted, the Complaint equates the continued operation of Global with a breach of fiduciary duty

without regard to the good faith of the Insider Defendants or their reason for continuing Global's operations. While it is true that the Complaint also pleaded that the Goldman's engaged in self-dealing, it does not state or imply that the Insider Defendants continued to operate Global to further the Goldmans' self-dealing. Accordingly the Thirteenth Cause of Action is legally insufficient.

The Fourteenth Cause of Action repeats the preceding claim. It alleges that the Insider Defendants caused "the Debtor to expand its debt and prolong its corporate life while the Debtor was continuously insolvent, ... deepened the insolvency of the Debtor and incurred additional debts which would have otherwise been avoided." (Complaint, ¶ 105.) This is no different than the earlier allegation that the Insider Defendants allowed "the Debtor to do business and incur indebtedness while the Debtor was insolvent and undercapitalized." (Complaint, ¶ 101.) It is legally insufficient for the same reason.

Finally, the Fifteenth Cause of Action alleges that the Insider Defendants aided and abetted Global's "deepening insolvency." It uses language nearly identical to the Fourteenth Cause of Action. The latter asserts that the Insider Defendants "caused" Global to expand its debt and prolong its life, and "allowed" the debtor to continue to operate and incur more debt which could have been avoided. (Complaint, ¶ 105). The Fifteenth Cause of Action alleges that "as a direct result of" the Insider Defendants' actions, Global incurred additional debt that they knew Global would not be able to pay, (Complaint, ¶ 109), and their conduct "allowed" Global to incur more debt which it could have avoided if it had ceased operations. (Complaint, ¶ 110.) There is no difference between the two claims, and the Fifteenth Cause of Action suffers from the same

pleading defects as the Thirteenth and Fourteenth Causes of Action.

The three claims will be dismissed, however, with leave to replead. It appears that the trustee may be able to allege a legally sufficient claim that the Goldmans (and possibly others) prolonged Global's existence so that they could continue to receive fraudulent transfers. I granted leave to replead other dismissed claims following the oral argument, and the trustee will have another opportunity to assert this claim, consistent, of course, with the dictates of FED. R. BANKR.P. 9011.

In conclusion, the claims against Atlantic Bank are dismissed. The remaining claims against the Insider Defendants are dismissed with leave to replead within thirty days of the date of the order, which the trustee is directed to settle, reflecting the disposition of both motions.